**TIDELANDS AUTOMOBILE CLUB, Appellant,**

v.

**Zibia WALTERS, Appellee.**

No. 09–84–356 CV.

Court of Appeals of Texas, Beaumont.

Nov. 7, 1985.

Rehearing Denied Dec. 4, 1985.

Fred Lewis, Houston, for appellant.

George Michael Jamail, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

This case involves the tort of intentional infliction of emotional distress.

Iva and Zibia Walters were members of the Tidelands Automobile Club. As part of Iva Walters' membership, a life insurance policy through Legal Security Life Insurance Company was issued in the amount of $2000.00 covering her life and naming her husband as beneficiary. Mrs. Walters was killed in a one vehicle accident on December 16, 1981.

Thereafter, a claim was filed to collect the proceeds of the policy. In connection with processing the claim, Tidelands requested information from a Justice of the Peace of Jefferson County concerning whether or not a blood test was made at the time of the autopsy of Mrs. Walter's body and if so, whether the test showed any traces of alcohol.[1] In February, 1982, Judge Harold P. Engstrom responded in a letter informing Tidelands, that in the opinion of the Regional Crime laboratory, Mrs. Walters *was not* intoxicated.

In April, 1982, Mrs. Walters' daughter began to inquire why the claim had not been paid. Tidelands replied by sending the daughter a copy of a letter from Judge Engstrom wherein it stated Mrs. Walters *was* intoxicated. Upon receiving this letter, Mrs. Walters' daughter took the letter to Judge Engstrom and compared the two letters. A short time later, Mr. Walters was told of the reason the claim was being denied. According to Mr. Walters and his witnesses, the allegation that Mrs. Walters had been intoxicated caused him severe emotional distress. Mr. Walters then filed suit against Legal Security Life for payment of the policy benefits.

As the discovery process progressed, it became apparent someone had altered Judge Engstrom's original letter. Mr. Walters amended his petition bringing in Tidelands and seeking additional damages for severe emotional distress. Once Legal Security Life became aware that Mrs. Walters had not been intoxicated, they settled the insurance policy portion of the lawsuit. Mr. Walters continued with his claim against Tidelands for the intentional infliction of emotional distress.

At the trial, representatives of Legal Security testified they had received Judge Engstrom's letter from Tidelands in the altered form. No one at Tidelands admitted to altering the letter, but, on the contrary, claimed to have sent the genuine letter to Legal Security. The court submitted the following special issues to the jury:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Tidelands Auto Club intentionally altered the letter of February 22, 1982, to read that Iva Walters was intoxicated?

Answer "We do" or "We do not".

Answer: "We Do"

"Intentionally" means the actor desires to inflict severe emotional distress or where he knows that such distress is

---

1. There was an exception in the policy that did not cover any injury as a result of the insured

being intoxicated.

substantially certain to result from his conduct.

If you have answered Special Issue No. 1 "We Do", and only in that event, then answer:

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the act of intentionally altering the letter by Tidelands Auto Club constituted extreme and outrageous conduct?

Answer "We do" or "We do not".

Answer: "We Do"

By the term emotional distress is meant any highly unpleasant mental reactions, such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry. By severe is meant that the distress inflicted is so extreme that no reasonable man could be expected to endure it without undergoing unreasonable suffering.

If you have answered Special Issue No. 2 "We do", and only in that event, then answer:

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that the altering of the letter by Tidelands Auto Club proximately caused Zibia Walters to suffer severe emotional distress.

Answer "We do", or "We do not".

Answer: "We Do"

By the term severe emotional distress is meant all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. It is only where said emotional state is extreme that liability for severe emotional distress arises. By extreme is meant that the distress inflicted is so severe that not [sic] reasonable man could be expected to endure it without undergoing unreasonable suffering.

## SPECIAL ISSUE NO. 4

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Zibia Walters for his harm, if any, resulting from the occurrence in question.

ANSWER in dollars and cents, if any, with respect to the following element.

(A) His severe emotional distress which he has suffered, if any.

ANSWER: "$10,000"

## SPECIAL ISSUE NO. 5

Find from a preponderance of the evidence what sum of money, if any, should be assessed against Tidelands Auto Club as exemplary damages.

"Exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount you may have found as actual damages.

Answer in dollars and cents, if any.

Answer: "$40,000"

Based upon the jury's answers, the trial court entered judgment against Tidelands in the amount of $50,000.00. Tidelands brings this appeal setting forth five points of error. Point of error number one alleges that Texas does not recognize the doctrine of intentional infliction of emotional distress. Point of errors numbers two and three allege there was no evidence or insufficient evidence that Mr. Walters suffered severe emotional distress. Point of error number four alleges that the amount of damages for plaintiff's severe emotional distress was excessive. The final point of error alleges the jury's award of exemplary damages was not reasonably proportional to actual damages.

Appellant's argument regarding point of error number one is based solely on *Harned v. E.Z. Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953). Appellant asserts that *Harned* holds that recovery for emotional distress or mental anguish cannot be had in the absence of other injury. Appellant further asserts that *Harned* has not

been specifically overruled and thus this court of appeals is bound by the pronouncement of the Texas Supreme Court. *Woodard v. Texas Department of Human Resources*, 573 S.W.2d 596 (Tex.Civ.App.—Amarillo 1978, no writ); *Jones v. Hutchison County*, 615 S.W.2d 927 (Tex.App.—Amarillo 1981, no writ).

The case was pleaded, tried and presented to the jury as set forth by the RESTATEMENT (SECOND) OF TORTS sec. 46 (1965). The Restatement requires four elements for the tort of intentional infliction of emotional distress. They are: (1) the defendant acted intentionally or recklessly, (2) the conduct was "extreme and outrageous", (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. We find no Texas cases which explicitly reject this tort.

Texas courts have, in the past, generally adopted and followed the Restatement's position. *E.g.*, *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967); *Reddinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). We find no cogent reason, in our jurisprudence, nor that of other jurisdictions, not to follow the Restatement in this instance.

As to appellant's argument that *Harned, supra*, precludes this court from recognizing this cause of action, we believe his reliance is misplaced. *Harned* was a case which dealt with mental anguish arising out of a debt collection. *Harned* held that the common law rule of not allowing damages for mental anguish absent physical injury would stand absent Legislative action to the contrary. Was *Harned* a narrow decision dealing solely with a cause of action based upon unreasonable debt collection practices? Was it a limited holding based upon the requirements that to recover for mental anguish there must be physical injury. Was it a general holding that specifically rejected section 46 of Restatement?

There is language in *Harned* which might lead one to reach any of the above suggested conclusions.

*Duty v. General Finance Company*, 154 Tex. 16, 273 S.W.2d 64 (1954), gives us insight into *Harned*. This too was a debt collection case. The court stated at 65:

"The majority opinion of the Court of Civil Appeals is based on the conclusion that the case is ruled by our decision in *Harned v. E–Z Finance Company*, 151 Tex. 641, 254 S.W.2d 81, and that the language of that opinion clearly indicates that a cause of action was not alleged in this case. Petitioners do not attack that decision or call upon us to reconsider the question there decided. It is their position that, properly interpreted, the opinion in that case is no authority for denying them recovery in this case. We are in accord with their position. What was held in that case was that damages cannot be recovered for mental anguish alone, but the question of whether such damages may be recovered when there is also physical injury, injury to property, or other elements of actual damages was not before the court.... In the Harned case no question of damages for physical injury, loss of property or reputation was involved. Our opinion recognized that, had there been an allegation of physical harm, a different question would have been presented. In the instant case petitioners have alleged physical injury, loss of employment, and acts constituting, in effect, slander, as well as mental anguish. No authorities other than those cited in the Harned case, supra, need be cited in support of our conclusion that those allegations are sufficient to state a cause of action."

Thus in 1954, our Supreme Court characterized *Harned* as a narrow holding which denied relief for mental anguish absent physical injury, while apparently recognizing the cause of action.

The *Harned* holding was further discussed by Chief Justice Greenhill in *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967) wherein he stated at 630:

"In *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953), this Court refused to adopt the 'new tort' of intentional interference with peace of mind which permits recovery for mental suffering in the absence of resulting physical injury or an assault and battery. This cause of action has long been advocated by respectable writers and legal scholars. (Citations omitted). However, it is not necessary to adopt such a cause of action in order to sustain the verdict of the injury in this case. The *Harned* case recognized the well established rule that mental suffering is compensable in suits for willful torts 'which are recognized as torts and actionable independently and separately from mental suffering or other injury.' 254 S.W.2d at 85. Damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body. Restatement of Torts 2d sec. 18. Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contracts which do actual physical harm, but also for those which are offensive and insulting. (Citation omitted). We hold, therefore, that plaintiff was entitled to actual damages for mental suffering due to the willful battery, even in the absence of any physical injury."

In another debt collection case, *Credit Plan Corporation v. Gentry*, 516 S.W.2d 471 (Tex.Civ.App.—Houston [14th Dist.] 1974), *rev'd on other grounds*, 528 S.W.2d 571 (Tex.1975), *Harned* was cited for the proposition that "where there is a finding of malice or an action constituting willful and wanton disregard of the plaintiff's well being, recovery for mental anguish alone which was proximately caused by the wrongdoing is allowed".

In *Billings v. Atkinson, supra,* the rationale of *Harned* was rejected when the court stated:

"..., [T]he court of civil appeals denied petitioner's recovery of damages for mental suffering in the absence of resulting physical injury, citing *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81, and *Fisher v. Carrousel Motor Motel, Inc.*, 424 S.W.2d 627 (Tex.1967). These cases do not support the court of civil appeals holding in view of our present holding that the invasion of privacy is a willful tort which constitutes a legal injury. Damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of willful invasion of the right of privacy because the injury is essentially mental and subjective, not actual harm done to the plaintiff's body. (Citations omitted). The right of privacy is a right distinctive in itself and not incidental to some other recognized right for breach of which an action for damages will lie. A violation of the right is a tort."

In the recent case of *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983), the majority held:

"A parent's recovery under the wrongful death statute includes the mental anguish suffered as a result of the child's wrongful death. The destruction of the parent-child relationship results in mental anguish, and it would be unrealistic to separate injury to the familial relationship from emotional injury. *Wilson v. Lund*, 80 Wash.2d 91, 491 P.2d 1287, 1292 (Wash.1971) (en banc). Injuries resulting from mental anguish may actually be less nebulous than pain and suffering, or injuries resulting from loss of companionship and consortium. A plaintiff should be permitted to prove the damages resulting from a tortfeasor's negligent infliction of emotional trauma. *Leong v. Takasaki*, 55 Hawaii 398, 520 P.2d 758, 767 (Hawaii 1974). This includes recovery for mental anguish.

In this case Mrs. Sanchez proved she is suffering from traumatic depressive neurosis. She presented testimony that she is despondent and disoriented, has been forced to seek medical attention for her

neurosis and has frequent neck and shoulder pains and headaches. Mrs. Sanchez has proved that she suffered mental anguish, and therefore, is entitled to recover the $102,500 awarded to her by the jury for her mental anguish."

Chief Justice Pope, in his dissent, states:

"The majority opinion does not clearly delineate the proof required to recover its newly created damages for mental anguish. Some of the language in the opinion suggests that any mental anguish, however slight, is compensable. The established threshold for recovering mental anguish damages requires proof of willful tort, gross negligence, willful and wanton disregard, or physical injury resulting from the mental anguish. This threshold is universally applied in the common law and statutory law of this state. *E.g., Farmers & Merchants State Bank of Krum v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981) (Uniform Commercial Code); *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777, 779 (Tex.1980) (deceptive trade practices); *Billings v. Atkinson,* 489 S.W.2d 858, 861 (Tex.1973) (invasion of privacy); *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 630 (Tex.1967) (assault and battery)."

Justice Ray, in a concurring opinion on motion for rehearing, observes:

"We have permitted Mrs. Sanchez to recover damages for mental anguish, recognizing that '[a] plaintiff should be permitted to prove the damage resulting from a tortfeasor's negligent infliction of emotional trauma.' Mrs. Sanchez introduced evidence that she is suffering from traumatic depressive neurosis and as a result must seek medical care for physical pains associated with her neurosis. While the majority opinion does not·address the issue, I do not believe that proof of such physical manifestations should be a necessary predicate for recovery for mental anguish. *Connell v. Steel Haulers, Inc.,* 455 F.2d 688, 691 (8th Cir.1972).

Mr. Chief Justice Pope, in his dissent to the majority opinion, states that

'[s]ome of that language in the opinion suggests that any mental anguish, however slight, is compensable.' While I agree with his observation, I disagree with his objection."

*Sanchez, supra,* has been recently interpreted in *Missouri Pacific R. Co. v. Vlach,* 687 S.W.2d 414 (Tex.App.—Houston [14th Dist.] 1985, no writ). The Houston court stated at 417:

"... Appellant argues that while *Sanchez* allowed a mother to recover mental anguish damages for the death of her child, it did not abrogate requirement of accompanying physical injury. We disagree. We do not find in that case a requirement that proof of such physical manifestations should be a necessary predicate for recovery for mental anguish."

■ Do these cases and others such as *Brown v. American Transfer and Storage,* 601 S.W.2d 931 (Tex.1980), *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984), *Baptist Hospital of Southeast Texas v. Baber,* 672 S.W.2d 296 (Tex. App.—Beaumont 1984, writ granted), and *Kramer v. Downey,* 680 S.W.2d 524 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) now allow this cause of action without physical injury? To hold otherwise would not be consistent with sound judicial interpretation. We, therefore, hold that the cause of action alleged in the instant case has not been rejected by our highest court and thus, recognize it in our state. Tideland's point of error number one is overruled.

We now consider points of error numbers two and three which question the legal and factual sufficiency of the evidence. In doing so we are cognizant of *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965), and *In re King's Estate* 150 Tex. 662, 244 S.W.2d 660 (Tex.1951).

The tort of intentional infliction of emotional distress, as formulated in the Restatement, requires there be sufficient proof of severe emotional distress, wholly apart from any outrageous conduct on the defendant's part. This requirement is, in part, a means to limit fictitious claims.

Here, Tidelands argues that Mr. Walters at best only proved mental anguish, thus falling short of proving severe emotional distress. A summary of the evidence on this point is necessary.

Mr. and Mrs. Walters had been married for forty-six years prior to her death. They were members of the Assembly of God church. Mrs. Walters had never consumed alcohol during their marriage. At the time of trial, Mr. Walters was seventy years of age. Mr. Walters testified that prior to being informed of the letter he was still experiencing some grief over the death of his wife and was mystified why the insurance claim was not being paid. Upon being informed of the allegations that Mrs. Walters had been intoxicated at the time of the accident, it "upset" him, he couldn't sleep at night, and he "couldn't get it off my mind, knowing that she didn't drink". He further testified he went to see a doctor, not really wanting to, but it "seemed to me I had to do something". He went on to say that when he heard about it he went into shock, he closed himself up in a room for several days and he just could not talk to his children. He stated he was upset and did not want to see anyone.

The Walters' daughter testified she delayed telling her father about the letter because he was upset over Mrs. Walters' death. She testified that after she told her father of the letter, he became even more upset and was very nervous. He stayed upset and was very angry. She testified "he made comments like he'd kill anybody or shoot anybody that came in contact with him under this thing for saying that my mother was drunk, knowing that she wasn't drunk and that she didn't drink". She further testified her father had to go to bed for a few days because he just couldn't concentrate and he couldn't think and couldn't comprehend as to what was going on. She elaborated thusly, "He became very ill and very disoriented. He became angry. I don't know how to de-

scribe it. It was just something that he couldn't handle knowing that she didn't drink and here's this piece of paper saying that she was drunk". The daughter confirmed her father went to see a doctor regarding this.

Appellant correctly states that it is for the court to determine whether on the evidence severe emotional distress can be found and it is for the jury to determine whether, on the evidence, it has in fact existed. Here the trial court made the initial finding[2] and the jury made the subsequent one. We find both were correct. The jury was given a proper definition of severe emotional distress. Based upon the evidence and in assessing the credibility of the witnesses, the jury found that Mr. Walters suffered severe emotional distress. The evidence will support their finding both legally and factually. Points of error numbers two and three are overruled.

In point of error number four, Tidelands allege the amount of damages awarded by the jury is excessive. There is no certain standard to measure damages of this nature as they cannot be proven with certainty and accuracy. Therefore, the question of damages, if not excessive, is properly left for the jury to determine. *Gonzales v. Southwestern Bell Telephone Co.*, 555 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1977, no writ). There are no objective guidelines by which we can measure the money equivalent of mental distress. Much discretion must be allowed the jury in fixing the amount. *Green v. Meadows*, 527 S.W.2d 496 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). We have reviewed all the evidence in light of the applicable rules. We do not find the award for severe mental distress to be excessive. Point of error number four is overruled.

Point of error number five complains of the excessiveness of the exemplary damages as not being reasonably proportional to actual damages. Exemplary

2. The trial court overruled Tidelands objections prior to the issues being presented to the jury. The trial court subsequently overruled Tide-lands' motions for judgment n.o.v. and new trial.

damages must be reasonably proportioned to actual damages but there can be no set rule or ratio between the amounts which will be considered reasonable. The determination of exemplary damages must depend upon the facts of each case and factors to be considered in determining whether the award is reasonable include the nature of the wrong, character of conduct involved, degree of culpability of wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends the public's sense of justice and propriety. *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). Unless the award is so large as to indicate that it is the result of passion, prejudice or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside on appeal. *Alamo, supra,* and see *Kraus v. Alamo National Bank of San Antonio,* 586 S.W.2d 202 (Tex.Civ.App.—San Antonio 1979). Using the foregoing standard of review, we decline to set aside the award of exemplary damages. Point of error number five is overruled. The judgment of the trial court is affirmed.

AFFIRMED.