Jerry E. CHILES, Appellant,

v.

Patti Sue Sullivan CHILES, Appellee.

No. B14–88–00470–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 26, 1989.

Rehearing Denied Nov. 30, 1989.

John F. Nichols, Warren Cole, Houston, Oliver S. Heard, Richard R. Orsinger, San Antonio, for appellant.

Earle S. Lilly, Pamela E. George, Houston, for appellee.

Before MURPHY, ROBERTSON and SEARS, JJ.

## OPINION ON MOTION FOR REHEARING

SEARS, Justice.

On Motion for Rehearing, the original opinion is withdrawn and replaced with the following opinion.

In the dissolution of the marriage of Jerry E. Chiles and Patti Sue Sullivan Chiles, the trial court awarded Patti $900,000 as her share of the community property and $500,000 as compensation for the intentional infliction of emotional distress. In twelve points of error Jerry challenges the

trial court's finding that the premarital agreement between Patti and Jerry was invalid, and contends the trial court's award of a tort judgment was error. We modify the trial court's judgment and, as modified, affirm.

On March 2, 1985, Jerry and Patti Chiles were joined in marriage. Approximately two weeks prior to the marriage, on February 15, 1985, Jerry and Patti signed a premarital agreement that precluded the acquisition of community property during their marriage. Twenty-two months after the marriage, Patti filed for divorce. In her original petition for divorce, she challenged the validity and enforceability of the premarital agreement and asserted a claim against Jerry for intentional infliction of emotional distress. After a jury trial, the court found the premarital agreement was not enforceable and awarded Patti $900,000 as her share of property which the court classified as community property. The court further awarded Patti $500,000 in damages for the intentional infliction of emotional distress.

In his first point of error, Jerry contends the trial court erred in finding a community property estate and awarding Patti a $900,000 money judgment as her share of that estate. He contends the agreement signed before the marriage is valid and enforceable.

Patti and Jerry signed a premarital agreement that stated it was their intent, during their marriage, that they would not own any community property. Any property acquired during the marriage was to be jointly owned in equal shares by their respective separate estates. At trial, Patti challenged the enforceability of the agreement claiming the agreement was unfair and that her signature was procured through fraud, duress, or overreaching. The jury found she did not sign the agreement as a result of fraud, duress, or overreaching, but also found that the agreement was not *fair* to Patti. Based on the finding that the agreement was not fair, the trial court found the agreement was unenforceable. Jerry challenges the trial court's finding, asserting the submission of

a jury question concerning the fairness of the premarital agreement was immaterial.

To determine whether the question of fairness is material to the validity of premarital agreements, we will examine sections of the code that control the enforceability of such agreements. Sections 5.41 and 5.42 of the Texas Family Code Annotated (Vernon 1986) were enacted to allow persons intending to marry and married persons to enter into enforceable agreements concerning their property. However, to enforce the agreement, section 5.45 of the Family Code required that the party relying on the premarital agreement had to prove by clear and convincing evidence that the party against whom enforcement was sought gave informed consent, and that the agreement was not procured by fraud, duress, or overreaching.

Because of the onerous burden of proof set forth in section 5.45 of the Family Code, the legislature adopted the Uniform Premarital Agreement Act, which shifted the burden of proof from the party relying on the agreement to the party challenging the enforceability of the agreement. Section 5.46 now provides:

(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(C) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

(b) An issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law.

We are bound to apply the law as it existed at the time the divorce decree was signed. *Sadler v. Sadler*, 769 S.W.2d 886 (Tex.1989). The decree was signed February 2, 1988. At that time section 5.46 of the Texas Family Code was in effect. Under section 5.46, Patti had the burden to prove either: (1) the agreement was not executed voluntarily, or (2) the agreement was unconscionable when it was executed *and* before execution, she was not provided a fair and reasonable disclosure of Jerry's property or financial obligations, she did not waive her right to such disclosure, and she did not have adequate knowledge of Jerry's property or financial obligations. There was no evidence of involuntary execution by Patti, that the agreement was unconscionable or that she had inadequate knowledge of Jerry's assets. A jury finding that the agreement was not fair to Patti does not satisfy her burden of proof, nor is it material to the enforceability of the agreement. The record shows that Patti was represented by counsel at all times during extensive negotiations and drafts of the agreement. Also, the agreement was executed a second time, immediately after the marriage, to further express the intent of the parties that there would be no community property.

Parties should be free to execute agreements as they see fit and whether they are "fair" is not material to their validity. We find the agreement is valid and enforceable. Jerry's first point of error is sustained.

Because points two, six, eight, nine, ten, eleven, and twelve assert errors in the division of the purported community property, our disposition of point of error number one pretermits discussion of those points.

*Attorney's Fees in Divorce Actions*

In his seventh point of error, Jerry asserts the trial court erred in holding him personally liable for Patti's attorney's fees in the amount of $134,534. The trial court does not have inherent authority to award attorney's fees in a divorce action. In the absence of statutory authority or the consent of the litigant, a court may not award attorney's fees to a party. *Grigsby v. Hopkins*, 218 S.W.2d 275, 276 (Tex.Civ. App.—Fort Worth 1949, writ ref'd). The Texas Civil Practice and Remedies Code provides for recovery of reasonable attorney's fees if the claim is for rendered services, performed labor, furnished material, freight or express overcharges, lost or damaged freight or express, killed or injured stock, a sworn account, or an oral or written contract. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). Attorney's fees in a divorce action are not permitted by any other statute. However, in a divorce suit the court may award either spouse his or her attorney's fees as part of the court's equitable powers to make a just and fair division of the marital estate. *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1950) and *Austin v. Austin*, 619 S.W.2d 290, 292 (Tex.Civ.App.—Austin 1981, no writ). Other than the court's equitable power to divide the community property, we can find no other authority for a trial court to award attorney's fees to one party in a divorce action. Because we have found that there was no community property estate, the award of attorneys fees was error. Jerry's seventh point of error is sustained.

Jerry's third point of error requires us to determine whether a cause of action for intentional infliction of emotional distress lies in a divorce action. The question we must answer is: Does the law accept the interest in peace of mind as entitled to independent legal protection against intentional invasions? Further, if the law recognizes such a tort, may it be pursued in a suit for dissolution of marriage?

First, we will address the Texas courts' recognition of the tort.

*Negligent Infliction of Emotional Distress*

Texas first recognized emotional distress as a compensable injury in *Hill v. Kimbal*, 76 Tex. 210, 13 S.W. 59 (1890). In that case, the plaintiff sought damages for emotional distress after suffering a miscarriage when she witnessed an altercation started by the defendant. The court recognized a cause of action for the negligent infliction of emotional distress, but limited

recovery to injuries *where the emotional distress* was manifested by physical symptoms. The court further restricted recovery for emotional distress only when coupled with a willful tort.

In recent years, the court has begun to remove the barriers by abrogating the physical manifestation requirement in cases of battery or other torts. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967). The court later removed the physical manifestation requirement in wrongful death cases. *Moore v. Lillebo*, 722 S.W.2d 683 (Tex.1986). Recovery for emotional distress reached its peak in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), which established that proof of physical injury is no longer required to recover for negligent infliction of emotional distress.

The courts of appeals have not fully embraced the holding in *St. Elizabeth*, and have resurrected some of the old barriers to recovery for emotional distress. *City of Watauga v. Taylor*, 752 S.W.2d 199 (Tex. App.—Fort Worth 1988, no writ) (damages allowed for plaintiff who testified to physical symptoms of distress, but recovery denied to plaintiff who described distress as disheartening and frustrating); *Kneip v. United Bank–Victoria*, 734 S.W.2d 130 (Tex.App.—Corpus Christi 1987, no writ) (allowed debtors in a bank fraud case to recover damages for mental anguish only after they testified that prior conditions such as headaches, arthritis, and stomach ailments, worsened as a result of the fraud); *Heath v. Herron*, 732 S.W.2d 748 (Tex.App.—Houston [14th Dist.] 1987, writ denied) (emotional distress damages should not be awarded in legal malpractice cases in the absence of egregious or extraordinary circumstances).

*Intentional Infliction of Emotional Distress*

In *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), the Beaumont Court of Appeals recognized a cause of action for intentional infliction of emotional distress. In *Tidelands*, an automobile club member filed a claim for death benefits arising out of an automobile accident that killed his wife. The claim was denied because the auto club claimed the wife was intoxicated. The husband became severely emotionally distressed because his wife did not drink alcoholic beverages. He later discovered a lab report that indicated his wife was not intoxicated, and he later discovered evidence that proved the auto club knew the wife was not intoxicated. The husband asserted a cause of action for intentional infliction of emotional distress against the auto club and recovered $50,000 in damages. The Beaumont Court of Appeals affirmed the award and recognized the tort of intentional infliction of emotional distress. The elements of the tort as recognized in Tidelands are: (1) the defendant acted intentionally or recklessly, (2) the conduct was "extreme and outrageous," (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Id.* at 942.

This tort has also been acknowledged in a suit on a contract and in a workers' compensation action. In *Bulgerin v. Bulgerin*, 724 S.W.2d 943 (Tex.App.—San Antonio 1987, no writ), appellants sued their daughter-in-law, the widow of their deceased son, for breach of contract. They alleged that she agreed by written contract to share with them any recovery she received in a wrongful death action arising from her husband's death. The daughter-in-law recovered on the wrongful death action and then refused to share the money she recovered. The parents filed suit and the daughter-in-law counterclaimed that her in-laws had intentionally inflicted emotional distress on her and had obtained her signature on the written contract by duress and undue influence. The jury found that the in-laws willfully, consciously or knowingly inflicted emotional distress on their daughter-in-law. The court of appeals upheld the finding and the damage award. It is interesting to note that the jury issue on damages inquired about the physical pain and mental anguish suffered by the daughter-in-law and not strictly the emotional distress. Although there were no pleadings regarding physical pain, the appellant

(cross-defendant) failed to object to evidence of the various manifestations of physical pain.

The Austin court of appeals recognized the possibility of recovery for the tort of intentional infliction of emotional distress in a workers' compensation action. In *Service Lloyds Ins. Co. v. Greenhalgh*, 771 S.W.2d 688 (Tex.App.—Austin 1989, n.w.h.), the court held that the knowing and malicious failure to timely pay for medical treatment and benefits, plus the knowing and malicious hiring of an investigator and failure to confirm medical benefits, *can* support the tort of intentional infliction of emotional distress. However, the court went on to say this cause of action could be compensable because it was not *excluded* by the workmens' compensation act.

In *McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816 (Tex.App.—Houston [14th Dist.] 1988) reversed on other grounds, 33 Tex.S.Ct.J. 44 (October 21, 1989), this court held that where the conduct of an employer in terminating an employee was neither extreme, nor outrageous, an action did not lie for intentional infliction of emotional distress.

*Intentional Infliction of Emotional Distress Between Spouses*

In *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987), the husband brought an action for divorce and the wife counterclaimed to recover personal injury damages alleging that he had transmitted a venereal disease to her. The supreme court held that the wife's personal injury claim was valid because the husband had failed to assert interspousal immunity. That same year, in *Price v. Price*, 732 S.W.2d 316 (Tex.1987), the supreme court abolished interspousal tort immunity and stated that they abolished interspousal immunity as to *any* cause of action. *Price v. Price*, 732 S.W.2d at 319. The court candidly admitted, however, that the issue of interspousal immunity had not been preserved for their review. *Id* at 320. The Price case involved a suit by the wife against the husband for injuries received while she was a passenger on a motorcycle driven by her husband. The Texas Supreme Court did abolish interspousal immunity in 1978 for wilful or intentional torts in regard to a wrongful death case and in connection with a probate matter. *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1978).

The tort of "emotional distress" is a reflection of the belief in our society that when a person intentionally, or negligently, causes another to suffer physical injury, that actor should bear some responsibility for the injury inflicted upon the victim. Yet, the majority of cases dealing with *emotional distress*, as distinguished from physical injury, have found emotional distress to be noncompensable.

The tort alleged in this case is purely an emotional tort. Patti made no allegations of physical *injury* resulting from her emotional distress. Special issue number four (A) inquired if Jerry intentionally engaged in certain conduct with other persons, to which the jury answered "yes." Special issue four (B) inquired as to other conduct in which Patti was the object of "physical and verbal abuse, harassment, threats and generally provocative conduct." The jury again answered "yes." The jury also found that the above conduct was "extreme and outrageous" and was the proximate cause of "severe emotional distress" to Patti. However, there were no pleadings, evidence or issues related to *physical injury*. The reluctance of Texas courts to adopt the tort of intentional infliction of emotional distress, coupled with the retreat in Texas and in other jurisdictions from the recognition of negligent infliction of emotional distress without physical symptoms, leads us to the conclusion that the tort should not be recognized in a divorce action.

Texas courts have thus far never allowed a separate recovery for the intentional infliction of emotional distress in a lawsuit for divorce. While we recognize the trial court may consider fault in the distribution of community property, we believe permitting such separate damages in divorce actions would result in evils similar to those avoided by the legislature's abrogation of fault as a ground for divorce. We fully recognize and agree that the monument erected in the name of interspousal immunity was doomed to crumble into dust when examined in the enlightened view of mod-

ern law and society. Nonetheless, the creation of such a new cause of action that will allow a recovery by one spouse against the other, without proof of any physical injury, and in the unique and special setting of a lawsuit for divorce, would tend to obfuscate the issues of custody, support and division of community property. Therefore, we decline to recognize the intentional infliction of emotional distress as a separate cause of action in a suit for divorce. If Texas family law is to be expanded in this regard, it is up to the legislature or the supreme court to provide for a recovery. Jerry's third point of error is sustained.

Because Jerry's fourth and fifth points of error relate to the tort action, our disposition of the third point of error pretermits a discussion of those points.

In his eighth point of error, Jerry contends the court erred in imposing equitable liens against his separate property estate for enforcement of the $900,000 community property award, the $134,534 attorney's fees award, and the $500,000 tort award. Because we have found no basis for the trial court's award of those amounts, the liens are peripheral and are ordered dissolved.

The trial court's judgment is modified to deny all relief except the granting of the divorce.