**Robert Wayne POWELL, Appellant,**

v.

**Jo Lynn POWELL, Appellee.**

**No. 01–89–00341–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 5, 1991.

Rehearing Denied Feb. 13, 1992.

John C. Pavlas, Houston, for appellant.

John H. Rentz, Pamela E. George, Houston, for appellee.

Before DUNN, WILSON and COHEN, JJ.

## OPINION

COHEN, Justice.

Robert W. Powell (Bob) and Jo Lynn Powell (Jo) were married in 1986, separated in 1987, and divorced in 1989. Bob appeals from the divorce judgment, attacking the legal and factual sufficiency of the court's findings pertinent to the property division. We must decide whether the trial court abused its discretion in dividing the property. *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex.1982).

In his first point of error, Bob contends the evidence is legally and factually insufficient to support the court's findings that

1000 shares of corporate stock are Jo's separate property that she acquired by gift from Bob.

There is a presumption that all property possessed by either spouse during, or on dissolution of, marriage is community property. TEX.FAM. CODE ANN. § 5.02 (Vernon Supp.1991). This presumption can be overcome by "clear and convincing evidence" that a specific asset is separate property. *Id.* All property acquired during marriage by gift is the separate property of that spouse. TEX.CONST. art. XVI, § 15; TEX.FAM. CODE ANN. § 5.01(a) (Vernon 1975).

A gift is a transfer of property made voluntarily and gratuitously. *Hilley v. Hilley,* 161 Tex. 569, 576, 342 S.W.2d 565, 569 (1961). A gift requires: (1) an intent to make a gift, (2) delivery of the property, and (3) acceptance of the property. *See Grimsley v. Grimsley,* 632 S.W.2d 174, 177 (Tex.App.—Corpus Christi 1982, no writ). The burden of proving a gift is on the party claiming the gift. *See Woodworth v. Cortez,* 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.); *Diaz v. Cantu,* 586 S.W.2d 576, 580 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). A trial court has no authority to divest a spouse's interest in separate property, even though the interest is small. *Whorrall v. Whorrall,* 691 S.W.2d 32, 37 (Tex.App.—Austin 1985, writ dism'd w.o.j.); *Cameron v. Cameron,* 641 S.W.2d 210, 213 (Tex.1982) (a divestiture of separate property is unconstitutional).

Robert W. Powell & Associates, Inc. ("the company") was incorporated by Bob in 1979, before this marriage and before a previous marriage. The present divorce decree provides that all shares of stock in the company in Bob's name is Bob's separate property. The decree also states that Jo separately owned 1,000 shares of stock in the company, because Bob gave them to her during the marriage. Bob claims he merely "transferred" his stock to Jo for convenience, without conveying ownership.

There is ample evidence the stock was a gift to Jo and was thus her separate property. Bob transferred 500 shares of stock to Jo early in 1986, shortly after the marriage. Bob's secretary, Sallye Tucker, testified Bob intended to give these shares to Jo as a wedding present, without conditions. Bob transferred an additional 500 shares of stock to Jo in December 1986 by endorsing the shares in the presence of Sallye Tucker. Jo paid nothing for the stock. Bob contends he did not intend to *give* the stock to Jo on either occasion—the first 500 shares were "transferred" shortly after the wedding in order to promote the new marriage; the second 500 shares were temporarily transferred as a conditional gift to protect them from a former wife, who was a judgment creditor. However, there was no evidence that Bob tried to rescind the second gift after the disputes with his creditors were resolved. Bob did not ask Jo to return the stock until he commenced divorce proceedings. The share certificate conveying the second 500 shares is signed by Bob, and it "sells, assigns, and transfers unto Jo Lynn Powell" the shares without any conditions stated. Although Bob claims he expected Jo to return the shares after he disposed of his creditors, there was no evidence Jo agreed to that. The trial judge was not required to believe Bob's self-serving testimony regarding his intentions, especially when such testimony was not supported by the written documentation on the share certificate. The testimony of Jo and Sallye Tucker, plus Jo's possession of stock certificates in her name, signed and delivered to her by Bob, supports the finding. The finding of a gift is not against the great weight and preponderance of the evidence. *See Vallone,* 644 S.W.2d at 460.

Point of error one is overruled.

In point of error two, Bob attacks the trial court's order that he purchase Jo's 1000 separate property shares in the company by paying her its value, $16,000, in 11 monthly installments, due after the judgment of divorce. Bob complains that the order requires him to pay for Jo's separate property, and thus, it divests both spouses of separate property. We agree.

A trial court enjoys broad discretion in dividing the estate of the parties. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 141 (Tex.1977); TEX.FAM. CODE ANN. § 3.63 (Vernon Supp.1991). A trial court, however, may not divest the title of a spouse's separate real property, *Eggemeyer,* 554 S.W.2d at 141–42, and cannot award the separate personal property of one spouse to the other. *Cameron,* 641 S.W.2d at 220. Separate property interests of one spouse cannot be awarded to the other spouse, even though the interest is minimal and its retention by the spouse owning it might result in an economically impractical cotenancy between the spouses. *Whorrall,* 691 S.W.2d at 36–37. Here, the court's decree awarded Jo's separate property (1,000 shares of company stock) to Bob and required him to pay for it after the divorce with $16,000 that would then be Bob's separate property. This differs from *Vallone,* 644 S.W.2d at 460, where the court affirmed an award requiring one spouse to buy the other's stock, based on the existence of a *community* interest in the corporation. Bob was harmed because this order would divest him of separate property ($16,000) after the marriage.

We sustain point of error two because the court had no power to divest Jo of her separate property or to require Bob to buy it with his separate property after the marriage. The judgment is reformed to delete the provisions divesting Jo of her stock and requiring Bob to purchase it for $16,000.

In view of our disposition, we need not consider the third and fourth points of error complaining of the court's stock valuation.

In his fifth point of error, Bob claims that the trial court erred in awarding Jo attorney's fees. Bob complains that the court improperly awarded Jo $6,369 in attorney's fees because a divorce court can grant attorney's fees only for disputes over community property. Bob argues there was no community property, but only separate property, before the court. *See Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

A trial court may award attorney's fees arising out of a "just and right" division of a community estate. *Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). We do not need to reach the issue presented in *Chiles* because there was community property before the court in this divorce, though it was less valuable than the separate property. Both sides claimed a right to reimbursement, which Bob treated as a $5689 community asset, and Bob's inventory lists "nominal" household community property furnishings, plus $36,048 in community debt. Rings acquired during the marriage were appraised at $7,000, and Bob bought $3000 of furniture after the separation, but during the marriage. Both the rings and the furniture are presumed to be community property. The existence of community property provides sufficient authority for a trial court to award attorney's fees for the division of property. *Id.* Thus, the court did not abuse its discretion by awarding attorney's fees.

Point of error five is overruled.

Bob complains in point of error six that the court erroneously required him to reimburse Jo $8079 for an unspecified debt she incurred, and in point of error seven, that the court erroneously required him to pay $6000 for a debt she incurred to her parents. Bob claims there is insufficient evidence to prove the debts were community. The record does not disclose the nature of the $8079 debt. The $6000 debt was incurred by Jo during the marriage for car payments and other living expenses.

Regarding the $8079 debt, the presumption of community liability during marriage required Bob to prove that the debt was incurred by Jo separately. *Wierzchula v. Wierzchula,* 623 S.W.2d 730, 732 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). He did not do so. Thus, the debt was presumptively community. *Id.* Regarding the $6,000 debt, Jo testified that she incurred the liability during the marriage for necessities. Such a debt is a presumed community liability. *Id.* Thus, there is both evidence and a legal presumption to support the court's finding that the $6,000 debt was community.

Points of error six and seven are overruled.

■ Bob complains in points of error eight and nine that the court wrongfully placed judgment liens on his stock in several corporations and wrongfully enjoined him from diluting the stock issued by his corporations. Bob contends his cash supersedeas deposit of $33,492.80 satisfied Jo's judgment and made such relief unnecessary. We agree.

The liens were awarded "to secure the judgments herein awarded." The injunction prohibited Bob and others from "diluting the shares of stock presently issued and outstanding in any of the (named) corporations that would have the effect of diminishing the lien interest against the same granted to Jo Lynn Powell hereinabove...." The liens and the injunction are unnecessary in view of the cash supersedeas deposit, the sufficiency of which has not been challenged by Jo. Moreover, our decision to sustain the second point of error reduces Bob's liability secured by the deposit by almost one-half. Under these circumstances, the liens and the injunction cannot be justified. Our holding makes moot any attack on the legality of the liens at their inception.

Points of error eight and nine are sustained.

■ In his tenth point of error, Bob complains the trial court erred in awarding Jo a grandfather clock that was his separate property. Trial courts have wide authority in determining a division of property, and there is a presumption in favor of their discretion. *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974). Bob claims the clock was a gift from Jo and thus is his separate property. Jo admitted she gave the clock to Bob, but testified he accepted it "under false pretenses." The only false pretense she described was that Bob "broke the commitment to the marriage" by filing for divorce. Thus, she contends the clock was a "conditional gift" and the condition, continuation of the marriage, failed. She cites no authority supporting a spouse's right to reclaim a gift under these conditions, and she cites no evidence she told Bob of this

condition and he agreed to it. We conclude the grandfather clock is Bob's separate property as a result of the gift from Jo.

Point of error 10 is sustained.

■ In his eleventh point of error, Bob argues the trial court erred in releasing Jo from liability for a $10,000 loan from Robert W. Powell & Associates, Inc., to Retirement Unlimited, Inc. because the order "affects the rights of entities not made a party to this action," was unsupported by evidence, and was an abuse of discretion. Bob cites no part of the record where this complaint was presented to the trial court and no decision holding such a provision improper as part of a division of property. We are in no position to rule on the rights of Robert W. Powell & Associates, Inc., which was not a party to this case, although Bob, as its controlling shareholder, could have caused it to intervene. Even if we assume Bob has standing to assert rights on behalf of the absent corporation, it would be mere speculation to assume its rights were affected. There is no evidence of any note signed by Jo or on her behalf. Bob's brief cites only Bob's vague testimony to prove any loan existed, and the judgment refers to it as "the alleged loan." The trial court could have concluded there was no loan or no evidence that Jo was a debtor. There was no abuse of discretion.

Point of error 11 is overruled.

Bob's final point of error is a general attack on the judgment. He argues that there was no community property to divide, that he was divested of separate property, and that the award is tantamount to alimony. We have resolved these contentions by our rulings above.

The twelfth point of error is overruled.

Bob's second point of error is sustained; that part of the judgment divesting Jo Powell of her shares of Robert W. Powell & Associates, Inc. stock, and ordering Bob Powell to purchase these shares is reversed, and such language is deleted (item "1" under "i" on pages 8–9 of the judgment). Points eight and nine are sustained, and we order deletion of language

creating the liens and the injunction, as follows: 1) item "4" on pages 9–10 of the judgment; and 2) item "B" on pages 16–17 of the judgment. Point of error ten is sustained and the judgment is reformed to show the grandfather clock is awarded to Bob as his separate property.

Jo has not urged any conditional cross-points of error or requested a remand in the event we sustain any of Bob's points of error. Consequently, we affirm the judgment, as reformed.

DUNN, J., concurs and dissents.

Justice WARREN was a panel member when this case was argued. He died before this opinion issued. He was replaced by Justice WILSON, per order of THE CHIEF JUSTICE.

DUNN, Justice, concurring and dissenting.

As to point of error one, I concur with the majority that there is sufficient clear and convincing evidence to support the court's finding that Bob intended and did make a gift of the first 500 shares of Robert W. Powell & Associates, Inc. (the company) stock to Jo. However, as to the second 500 shares of Robert W. Powell stock, I disagree with the majority. Based on the evidence in this record, I would hold that the court erred in finding that Bob made a gift to Jo of the second 500 shares of stock, and that the second 500 shares of stock should be returned to Bob as his separate property.

I agree with the standard of review set out by the majority that, coupled with delivery and acceptance, there must be an intent to make a gift. I fail to find any evidence of donative intent as to the second 500 shares.

Bob testified as follows:

1. The company was incorporated in 1979, with an original issue of 1000 shares; on October 3, 1986, prior to his marriage to Jo, an additional 9000 shares were authorized. As of October 31, 1986, he owned 10,000 shares, the original 1,000 and the additional 9,000; on December 1, 1986, he divided the original 1,000 shares of stock into two portions, containing 500 shares each, and put 500 shares in Jo's name and kept the other 500 shares in his name; that he transferred the first 500 shares of stock "to keep peace in the family"; that Jo was not aware that there were 10,000 rather than 1,000 shares.

2. That in March 1987, he endorsed over to Jo the 500 shares that he had placed in his name because he feared that his former wife and her attorney, who were given a $6,000 and $25,000 judgment against him respectively, would try and take the stock and that he wanted to have a little something in reserve to keep going. He stated that Jo did not request the transfer, but she agreed to the transfer so that the stock would be protected and if anything happened to them, i.e., that they were no longer husband and wife, she would return the stock.

3. That he would not have transferred the second 500 shares to her without this understanding. Further, she felt the whole idea of the second transfer of the 500 shares was deceptive and that he was not a Christian for doing it. That no money, or consideration passed for the second 500 shares of stock.

Jo testified as follows:

1. That Bob owned the company before the marriage; that they lived together nine months after they were married and then separated.

2. Concerning the first 500 shares, she testified that the 500 shares of the company's stock were given to her. Her testimony follows:

Q. So that was a gratuitous act on his part?

A. The first 500 shares yes.

Q. And what about the second 500 shares—

A. That was an attempt to keep it from his ex-wife.

Q. And you knew that

A. Yes Sir.

. . . .

Q. So regardless of what the reason was, or the intent was, you're willing to

make something out of that by taking that stock, aren't you.

A. Yes Sir.

Q. Do you feel as though since he was wrong in doing it, the fact that you're wanting to keep it and benefit by is, that's Okay?

A. Yes Sir

3. Jo testified further that he gave her the first 500 shares on December 1, 1986; that he wanted her to have them as a commitment to the marriage, and she interpreted this as a wedding gift.

Sallye Tucker testified as follows:

1. She was an employee of the company for 13 months in 1986 and early 1987; that immediately after Bob obtained a divorce from his second wife, and before he married Jo, he discontinued his salary from the company for the purpose of having an impact on the divorce.

2. She stated that Bob had her issue the first 500 shares in Jo's name and he said "it was his wedding present to her ...”; that there were absolutely no strings attached to the first 500 shares.

3. She testified that she issued the second 500 shares in Bob's name. That her signature was on the back of the stock as well as Bob's and that it indicated that his 500 shares were transferred to Jo. This transfer was much later than the transfer of the first 500 shares. When she was asked if there was anything said, or any reason given for the transfer of the second 500 shares, she replied, "No, I do not recall.”

Based on the above evidence, there is no evidence contained in this record to support donative intent of a gift of the second 500 shares to Jo. Therefore, I would sustain Bob's first point of error as to the second 500 shares and overrule his point of error as to the first 500 shares inasmuch as the evidence supports donative intent on the part of Bob as to the first 500 shares.

Point of error five asserts Bob's claim that the trial court erred in ordering him to pay $6,369 in attorney's fees on Jo's behalf. I agree with the majority that this case does not fall into the fact situation in *Chiles* since there was only separate property involved in *Chiles*. My disagreement lies in the facts as stated by the majority. The court's discretionary power to award attorney's fees on behalf of the wife, as in this case, is supported by many considerations in the court's just and right division of the community assets and liabilities. This is true even if the assets exceed the liabilities, this being only one of the matters that the court considers in deciding to order attorney's fees paid on behalf of either of the parties in the divorce. *Carle v. Carle*, 149 Tex. 469, 474, 234 S.W.2d 1002, 1005 (1950). Under the record in this case, I would find that the trial court did not err in awarding Jo attorney's fees.

I would overrule point of error five.

In addressing points of error eight and nine, I disagree with the reasoning of the majority. As to the liens placed by the trial court on Bob's separate property, the evidence in the record supports that these liens bear no relationship to Bob's separate property. The majority reasons that "[t]he liens and the injunction are unnecessary in view of the cash supersedeas deposit, the sufficiency of which has not been challenged by Jo." This leaves an inference that if you do not file a supersedeas bond then the liens placed by the trial court on Bob's separate property may be proper. Therefore, I would address these points of error in the following manner.

In point of error eight, Bob complains that "the trial court erred in placing a judgment lien in favor of Jo on 20 percent of all stock owned by Robert W. Powell in Robert W. Powell & Asso., Inc. and a judgment lien on 30 percent of all stock, land, or interest owned by Robert W. Powell in [other companies owned by himself]." In point of error nine, Bob complains that "the trial court erred in enjoining [him] and the various corporations from diluting the shares of stock presently issued and outstanding." The trial court's final decree of divorce states that both of these awards were made "to secure the judgments herein awarded to her and against [Bob]." The trial court's judgment liens include the entirety of Jo's judgment.

When the trial court issued its final judgment on February 28, 1989, it placed a judgment lien on 20 percent of all stock owned by Bob in the company, and a judgment lien of 30 percent of all stock and/or interest owned by Bob in three of the other companies that he separately owned. Bob filed a cash deposit as a supersedeas bond in the amount of $33,492.80 on March 30, 1989, staying the execution of this judgment.

Bob asserts that both the judgment liens are improper because (1) he was required to file a supersedeas bond in addition to having his stock subject to the liens; (2) the trial court's liens prejudice and hamper his ability to do business after the divorce and also interfere with the rights of third parties in the various companies; and (3) the liens amount to a divestiture of separate property.

I would hold that the trial court erred in placing a lien against Bob's separate property, namely his shares of stock in the company and the other entities. Bob's shares of stock in both the company and the other entities were his separate property. A divorce court may impose an equitable lien against the separate property of a spouse to secure a monetary award that represents the consideration for the other spouse's interest in that property. *Johnson v. Johnson*, 804 S.W.2d 296, 299 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Kamel v. Kamel*, 760 S.W.2d 677, 679 (Tex.App.—Tyler 1988, writ denied).

In this case, neither Jo nor the community had any interest in the stock on which the trial court placed a lien. The stock and interest in the companies were Bob's separate property. Because the trial court's lien deprives Bob of his separate property, those portions of the judgment that place a lien on Bob's interest in the corporations should be deleted from the judgment.

I would sustain points of error eight and nine for the above reasons and reform the judgment to delete the liens against Bob's stocks and interest in all of his separate property companies involved herein.

In his eleventh point of error, Bob argues that the court erred or abused its discretion in releasing Jo from liability for a loan in the amount of $10,000.

The court held that "Jo Lynn Powell is not liable for nor obligated to pay the alleged loan from Robert W. Powell & Associates, Inc. to Retirement Unlimited, Inc. in the amount of $10,000." The evidence reveals that on March 8, 1987, the company in which Bob and Jo each owned separate property stock, transferred $10,000 to Retirements Unlimited, Inc., a company owned by Jo prior to the marriage and therefore her separate property. Neither of these companies was made a party to this cause of action. Therefore, the court had no jurisdiction to determine Jo's liability with regard to loans involving these two corporations. Bob testified, "A $10,000 check was written on Robert W. Powell & Associates, Inc. into Retirements Unlimited, Inc." It is not within the jurisdiction of the trial Court in this cause of action to make a determination as to the liability of Jo in regard to parties not before the court. *See* TEX.R.CIV.P. 39(a)(2)(i).

I would sustain point of error 11.

Bob's twelfth point of error appears to be a general attack on the trial court's division of community property. Bob argues that the court abused its discretion in dividing the community property; that the divorce decree is tantamount to alimony; that the divorce decree deprives him of separate property; that there is no evidence to support the court's division and characterization of community property.

A trial court enjoys broad discretion in dividing the community estate of the parties in a divorce. *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but rather, whether the court acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In dividing the estate of the parties, the trial court shall order a division of the property "that is just and right, having due regard for the rights of each party and any

189

children of the marriage." TEX.FAM. CODE ANN. § 3.63(a), (b) (Vernon Supp.1991).

In my opinion, the trial court, in this case, erred in awarding Jo the second 500 shares of stock in the company, in granting the liens against Bob's separate property to secure the judgments awarded to Jo, and in not awarding Bob the grandfather clock as his separate property. However, these errors involved misclassification of the separate property of both parties. None of the properties involved were community and therefore would not materially affect the trial court's "just and right" division of the community property.

Therefore, I would find that the court did not abuse its discretion in the division of community property, and reform the judgment to conform to the findings set out above as to the separate property of the parties and the liens placed on Bob's separate property. *Jacobs v. Jacobs* 687 S.W.2d. 731, 733 (Tex.1985).

I would affirm the judgment as reformed in the manner set out above.