**Elizabeth PANKHURST, Appellant,**

**v.**

**WEITINGER & TUCKER, Gregg K. Saxe and Don B. Morgan, Appellees.**

**No. 13–92–143–CV.**

Court of Appeals of Texas, Corpus Christi.

March 4, 1993.

Rehearing Overruled April 1, 1993.

Gerald P. DeNisco, Barbara E. Pusch, Houston, for appellant.

Daniel F. Shank, Davis & Shank, W. James Kronzer, Houston, for appellees.

Before NYE, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Mrs. Elizabeth Pankhurst appeals the trial court's dismissal of her legal malpractice claim against Weitinger & Tucker, Don Morgan, and Gregg Saxe (together referred to as Weitinger & Tucker). The trial court dismissed the claim because she lacked standing to bring the action. Elizabeth Pankhurst urges that her cause of action for legal malpractice is viable. We agree and reverse and remand for further proceedings.

This case began when a lawsuit was filed against Mr. Joseph Pankhurst, appellant's husband, and his company, Intercontinental Consolidated Companies, Inc. (ICC), in federal court in a case styled *National Marine Service, Inc., et al. v. Intercontinental Consolidated Companies,* numbered H–84–4518. Joseph Pankhurst and ICC filed a counterclaim against Cullen Center Bank and Continental Illinois National Bank. After filing the counterclaim, Joseph Pankhurst executed a document titled "Assignment of Interest In Cause of Action" dated December 5, 1986. By this document, Joseph transferred a portion of his community property interest in the federal lawsuit to his wife, Elizabeth, as her separate property. By a fee agreement dated February 3, 1987, Joseph and Elizabeth Pankhurst then engaged Weitinger Steelhammer & Tucker (now Weitinger & Tucker) to represent their interests. In March 1988, the federal court dismissed the counterclaim and entered a final judgment on behalf of Cullen Center Bank and the FDIC[1] and against Pankhurst and ICC. In May 1988, Joseph Pankhurst filed a Chapter 7 bankruptcy petition.

In February 1989, Elizabeth Pankhurst filed an original petition in state court alleging legal malpractice against Weitinger & Tucker in handling the counterclaim. Elizabeth Pankhurst filed her petition after the bankruptcy trustee's "No Distribution Report" and before Joseph Pankhurst's bankruptcy was closed on May 20, 1990. The trial court, after determining that Elizabeth Pankhurst had no standing to assert a legal malpractice claim, granted Weitinger & Tucker's motion to dismiss.

By point one, Elizabeth Pankhurst asserts that her legal malpractice action is viable because on December 5, 1986, Joseph Pankhurst *gifted* her with an undivided one-half of his community property interest in the federal lawsuit counterclaim. As evidence of the gift, she submitted to the trial court and to this court the Assignment of Interest In Cause of Action. She argues that by this gift, she owned a separate interest in the federal counterclaim, and therefore, has standing to assert a legal malpractice claim against Weitinger & Tucker. She contends that when she

---

1. FDIC had stepped into the shoes of Continental Illinois.

signed the fee agreement with Weitinger & Tucker she was agreeing that, based upon the conditions stated in the agreement, they would represent her separate interest in the federal lawsuit.

Weitinger & Tucker assert that Elizabeth Pankhurst's signature on the fee agreement was consistent with the community property nature of the federal counterclaim and had no other effect. The law firm also proposes, although no authority is cited, that one cannot make a gift of an undivided one-half interest of any community asset. Thus, contends Weitinger & Tucker, 1) because the legal malpractice action arose during the marriage before Joseph Pankhurst filed for bankruptcy, 2) the character of the legal malpractice action is community property, and therefore, 3) although not listed in Mr. Pankhurst's "Statement of Financial Affairs" for bankruptcy proceedings, nevertheless, the legal malpractice claim passed to the trustee in bankruptcy because the trustee did not discharge it. The law firm argues that in reality the assignment was an invalid attempt to partition or exchange community property under Texas Family Code sections 5.52 and 5.54.

■ In order for any person to maintain a lawsuit, that person must have "standing" to litigate the matters in issue. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984). Standing consists of some interest peculiar to the person individually and not as a member of the general public. *Id.* Without a breach of a legal right belonging to a plaintiff, no cause of action arises or can accrue to the plaintiff's benefit. *Housing Auth. of Harlingen v. State ex rel. Velasquez,* 539 S.W.2d 911, 913 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.). For a party to maintain a court action, the party must show that it has a justiciable interest in the litigation subject matter, either in its own right or in a representative capacity. *Id.*

■ Initially, in determining whether Elizabeth Pankhurst has standing to bring a legal malpractice claim against Weitinger & Tucker, for its actions in representing her interest, we must determine whether she had a separate property interest in the federal counterclaim by way of her husband's assignment. If she only has a community property interest in the federal claim, she would lack standing to assert the legal malpractice claim because the legal malpractice claim, also a community property asset, would have passed to the bankruptcy trustee.

■ Attached to Elizabeth Pankhurst's response to Weitinger & Tucker's plea in abatement, was the following Assignment of Interest in Cause of Action which provides in pertinent part:

I, Joseph Lawrence Pankhurst, of the City of Houston, County of Harris, and the State of Texas, in consideration of twelve years of marriage and the loyalty, love and affection, as well as devotion and support given me by my wife, Elizabeth Doris Pankhurst, do hereby Assign and Transfer unto said Wife, Elizabeth Doris Pankhurst, an undivided one-half of my residual community interest in and to that certain lawsuit hereinabove described; and to forever remain her sole separate property under her sole separate management and control.

I hereby covenant to execute and deliver such other assignments as may be necessary to vest full and complete title of said undivided one-half of my residual community interest in and to the hereinabove lawsuit hereby assigned.

On the occasion of our Twelfth Anniversary of Marriage, and as a token gift of my love and esteem, thus,

Given under my hand this the 5th day of December, 1986.

/s/

All property possessed by either spouse during marriage is presumed to be community property. Tex.Fam.Code Ann. § 5.02 (Vernon 1993). This presumption can be overcome by "clear and convincing evidence" showing that a particular asset is actually one spouse's separate property. *Id.* All property a spouse acquires by gift during marriage is the separate property of that spouse. Tex. Const. art. XVI, § 15;

Tex.Fam.Code Ann. § 5.01(a)(2) (Vernon Supp.1993).

Weitinger & Tucker contend that if Joseph Pankhurst wanted to convert one-half of his undivided one-half community property interest in the federal lawsuit into Elizabeth Pankhurst's separate property, he and his wife were required to follow partition or exchange rules for converting community property into separate property. *See* Tex. Const. art. XVI, § 15; Tex. Fam.Code Ann. § 5.52 (Vernon 1993). We disagree.

A partition or exchange agreement is the method by which spouses may *agree* that property acquired or to be acquired by each of them during their marriage will remain the separate property of the acquiring spouse. Tex. Const. art. XVI, § 15. Thus, the focus of a partition or exchange agreement is based upon the mutual agreement of the spouses. Procedurally, a partition or exchange agreement must be in writing and signed by both parties. Tex.Fam.Code Ann. § 5.54 (Vernon 1993).

We agree with Weitinger & Tucker that the assignment set out in pertinent part above is not an enforceable partition or exchange agreement. There is no indication in the document that there was any joint agreement to partition or exchange any community property interest in the federal lawsuit. Additionally, the assignment lacks Elizabeth Pankhurst's signature which is required for this to be a partition or exchange agreement. We next consider whether the assignment was a gift by Joseph to Elizabeth of a portion of his community property interest in the federal lawsuit.

A gift is a transfer of property made voluntarily and gratuitously. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 568 (Tex.1961). A gift requires 1) an intent to make a gift, 2) delivery of the property, and 3) acceptance of the property. *See Grimsley v. Grimsley*, 632 S.W.2d 174, 177 (Tex.App.—Corpus Christi 1982, no writ). The burden of proving a gift is on the party claiming the gift. *Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex.App.—

San Antonio 1983, writ ref'd n.r.e.). Thus, if established, a gift by a husband to his wife of a portion of his interest in community property becomes the wife's separate property. *Hilley*, 342 S.W.2d at 568; Tex. Fam.Code Ann. § 5.01(a)(2) (Vernon 1993).

Lack of consideration is an essential characteristic of a gift such that an exchange of consideration precludes a gift. *Pemelton v. Pemelton*, 809 S.W.2d 642, 647 (Tex.App.—Corpus Christi 1991), *rev'd on other grounds*, 836 S.W.2d 145 (Tex. 1992). "Gift" and "onerous consideration" are exact antitheses and a recital of onerous consideration "negatives the idea of a gift." *Id.* Additionally, one controlling factor in establishing a gift is the donative intent of the grantor at the time of the conveyance. *Ellebracht v. Ellebracht*, 735 S.W.2d 658, 659 (Tex.App.—Austin 1987, no writ).

We find the following persuasive: A gift by the husband to the wife of his interest in community property would become the separate property of the donee [spouse].... And so property acquired in the name of either spouse during marriage, otherwise than by gift, devise or descent, or in exchange for separate property, would, by force of the statute, be community property.

*Hilley*, 342 S.W.2d at 568 (quoting *Kellett v. Trice*, 95 Tex. 160, 66 S.W. 51, 54 (Tex. 1902)). Thus, we disagree with Weitinger & Tucker's position that the law prohibits a gift of an undivided one-half of Joseph Pankhurst's community property interest. Once a spouse has a separate property interest it cannot be divested even though the interest is minimal and its retention by the spouse might result in an economically impractical cotenancy between the spouses. *See Powell v. Powell*, 822 S.W.2d 181, 184 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (trial court erroneously disregarded spouse's small separate property interest when dividing property upon divorce).

We conclude that Joseph Pankhurst's assignment of an interest in the federal lawsuit was a gift of a portion of his community property interest to Elizabeth Pankhurst as her separate property. In reviewing the

assignment, although the word "consideration" appears in the document, we do not find evidence of any "onerous consideration." Additionally, we find an expression of Joseph Pankhurst's donative intent based upon his use of the language "token gift of my love and esteem."

Although the case before us is not a property division pursuant to a divorce as in *Powell,* nevertheless, the trial court cannot divest or disregard a spouse's separate property interest. We conclude that the trial court erred in dismissing Elizabeth Pankhurst's claim of legal malpractice based upon lack of standing.

Because we determine that Elizabeth Pankhurst had a separate property interest in the federal lawsuit including the counterclaim, her separate property interests in the federal lawsuit were represented by Weitinger & Tucker. She had a justiciable interest in the subject matter of the litigation. She was a client of Weitinger & Tucker and could assert a cause of action for legal malpractice against them. We sustain point one and reverse the trial court's judgment.