NUMBER 13-98-655-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


C.A. EDWARDS, JR., INDIVIDUALLY 

AND AS GUARDIAN OF ESTATE

OF HAZEL M. EDWARDS AND AS 

PERSONAL REPRESENTATIVE AND

HEIR OF HAZEL M. EDWARDS; AND

THE ESTATE OF HAZEL M. EDWARDS,

DECEASED, Appellant,


v.



MARIA CONCEPCION SHELLY

PENA, Appellee.

____________________________________________________________________


On appeal from the 332nd District Court of Hidalgo County,

Texas.

____________________________________________________________________




O P I N I O N



Before Chief Justice Seerden(1) and Justices Hinojosa and

Yañez

Opinion by Justice Yañez


 Appellant, C.A. Edwards, served as guardian for his stepmother,
Hazel Edwards. Shelly Pena, a former employee of Hazel Edwards,
brought suit against appellant alleging various causes of action. 
Appellant counterclaimed, alleging Pena breached a fiduciary duty to
Hazel Edwards. Following a trial to the jury, the court rendered
judgment in favor of Pena. Appellant appeals this judgment. We
reverse and render.

Background

 This case arises out a dispute over the handling of a certificate of
deposit ("CD") by appellant during his guardianship of Hazel Edwards. 
Pena claimed ownership of this CD. Pena had served as a personal
secretary and general assistant to Hazel Edwards following the death
of Hazel's husband in 1987. Before working for Hazel, Pena had been
employed as a secretary for Hazel's husband at his abstract company. 
Pena oversaw Hazel's finances and assisted her in daily tasks. Hazel
took Pena with her on several trips, including one to Hawaii and another
to visit Hazel's relatives in California. Hazel also gave Pena a number
of gifts. The record indicates that Hazel paid a substantial amount of
money to Pena, including money to pay off charges on Pena's credit
cards. In June of 1989, Hazel added Pena's name as a payee on the CD
which is the basis of this dispute.

 Over the years following her husband's death, Hazel began to
have health problems, which became increasingly more serious. Along
with her physical ailments, Hazel began to suffer from a progressive
form of dementia. In November of 1994, Hazel's stepson, C.A.
Edwards, appellant, was first appointed temporary guardian of Hazel's
person and estate; and eventually, on January 4, 1995, permanent
guardian of Hazel's person and estate. In the course of marshalling
Hazel's estate, appellant redeemed the CD and used the proceeds to
purchase another CD which listed only Hazel Edwards as payee.

 On January 27, 1995, Hazel Edwards died. Guardianship
proceedings were closed on April 10, 1995. On April 11, 1995, Pena
filed suit against appellant individually, as guardian of the estate of
Hazel Edwards, and as personal representative and heir of Hazel
Edwards. Pena alleged that appellant had wrongfully deprived her of
the CD to which Hazel had added Pena's name. Pena alleged that the
CD was her property, having been gifted to her by Hazel. Appellant
answered, arguing that Pena had no ownership interest in the CD
because the gift had not been completed. Appellant also
counterclaimed in the name of the estate of Hazel Edwards, alleging
that Pena had breached her fiduciary duty to Hazel Edwards by
depleting Hazel's estate through fraud, undue influence, and duress.

 The case was tried to a jury, which found that the CD had been
given to Pena and that appellant had committed conversion and fraud
by taking the CD from Pena. The jury also found that Pena had not
breached a fiduciary duty to Hazel. With six issues on appeal, appellant
challenges the trial court's jurisdiction, the jury's findings, and the
damage award.

The Jurisdiction of the District Court

 In his first issue on appeal, appellant argues that the district court
lacked jurisdiction to hear this case. Appellant contends that the county
court-at-law, by exercising jurisdiction over the guardianship of Hazel
Edwards, had dominant jurisdiction over this matter, exclusive of the
district court. See Tex. Prob. Code Ann. § 607(a) (Vernon Supp. 2000). 


 When a ward dies, the probate court loses jurisdiction of the
guardianship matter, except for the filing of the final accounting and
closing of the guardianship. See Tex. Prob. Code Ann. § 745(a)(2)
(Vernon Supp. 2000)(a guardianship of an incapacitated ward is settled
and closed when the ward dies); Carroll v. Carroll, 893 S.W.2d 62, 68
(Tex. App.--Corpus Christi 1994, no writ). The county-court-at-law's
jurisdiction over matters arising from the guardianship of Hazel
Edwards terminated after Hazel's death, except for the filing of the final
accounting. The district court properly exercised jurisdiction in this
case. Issue number one is overruled.



Derived Judicial Immunity

 In his fifth issue, appellant claims that, because he was appointed
guardian by the court, all of his actions as guardian are protected by
judicial immunity. Appellant directs us to no cases in which judicial
immunity has been extended to a guardian, and we find none. We will
address this issue by examining the doctrine of derived judicial
immunity.

 Judges are absolutely immune from liability for judicial acts
performed in the course of judicial proceedings over which they have
jurisdiction. Houston v. West Capital Fin. Servs., 961 S.W.2d 687, 689
(Tex. App.--Houston [1st. Dist.] 1998, writ dism'd w.o.j.). Judicial
immunity may also attach to persons authorized or appointed by a
judge to perform services for the court. Id. This is known as derived
judicial immunity. Id. We apply a functional approach in determining
if a particular person enjoys derived judicial immunity. Id.; Delcourt v.
Silverman, 919 S.W.2d 777, 782 (Tex. App.--Houston [14th Dist.] 1996,
writ denied). A person is entitled to derived judicial immunity if the
activities undertaken by the party are normal functions of the delegating
or appointing judge. Byrd v. Woodruff, 891 S.W.2d 689, 707 (Tex.
App.--Dallas 1994, writ dism'd by agr.).

 In the case of a guardian, the activities undertaken are not
functions of the court. A guardian takes possession of a ward's
property and manages the estate of the ward as a prudent person
would manage their own property. Tex. Prob. Code Ann. § 768 (Vernon
Supp. 2000). Possessing and managing property are not activities
generally undertaken by courts. 

 Further, state law subjects guardians, unlike judges, to liability. 
The probate code specifically states that a guardian may be held liable
for failing to exercise due diligence in collecting all claims and debts due
the ward and recovering possession of the ward's property. Tex. Prob.
Code Ann. § 772 (Vernon Supp. 2000). It has also been recognized that
guardians owe a fiduciary duty to wards and may be held liable if they
breach that duty. Byrd, 891 S.W.2d at 706. Appellant is not entitled to
the protection of absolute judicial immunity. Issue number five is
overruled.

The Evidentiary Challenge

 In his second and third issues, appellant argues that the evidence
admitted at trial was legally and factually insufficient to establish a
completed gift of the CD and thus Pena lacked the property interest
necessary to support her claims of conversion and fraud.

The "No Evidence" Standard of Review


 A "no evidence" standard of review is applied when the party not
bearing the burden of proof challenges a finding of fact by arguing that
the evidence is legally insufficient to support the finding. Hickey v.
Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990, writ
denied)(citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983)). 
If any evidence of probative value supports the finding, we must uphold
the jury's finding. Id. When reviewing a legal sufficiency challenge, we
consider all the evidence in the light most favorable to the prevailing
party, indulging every reasonable inference in that party's favor. 
Associated Indem. Corp. v. CAT Contracting, 964 S.W.2d 276, 286
(Tex. 1998); Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 853
(Tex. App.--Corpus Christi 1999, pet. denied). A legal sufficiency
challenge is sustained when the record discloses: (1) that there is a
complete absence of evidence of a vital fact; (2) that the court is barred
by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) that the evidence offered to prove a vital
fact is no more than a scintilla; or (4) that the evidence conclusively
establishes the opposite of the vital fact. Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997); Norwest Mortgage, 999
S.W.2d at 853. 

The Gift Question


 To establish the existence of a gift, a party must show there was
the intent to make a gift, delivery of the property, and acceptance of the
property. Pankhurst v. Weitinger & Tucker, 850 S.W.2d 726, 730 (Tex.
App.--Corpus Christi 1993, writ denied). The donor must, at the time
she delivers the subject matter of the gift to the donee, intend the
immediate divestiture of her ownership rights and the immediate and
unconditional vesting of ownership rights in the donee. Wells v.
Sansing, 151 Tex. 36, 245 S.W.2d 964, 965 (Tex. 1952); Yates v. Blake,
491 S.W.2d 751, 753 (Tex. Civ. App.--Corpus Christi 1973, writ ref'd
n.r.e.). Until a donor has divested herself, absolutely and irrevocably of
the title, dominion, and control of the subject of the gift, she has the
power to revoke it. Yates, 491 S.W.2d at 753-54. The donee does not
have ownership of the subject matter of the gift until the gift is
completed, and complete ownership has been transferred from the
donor to the donee. Id. at 754. The burden of proving a gift is on the
party claiming the gift. Pankhurst, 850 S.W.2d at 730. The property
that Pena claims was the subject of a gift to her from Hazel Edwards
was a CD worth $99,000. Although there was testimony about Hazel's
intent to give Pena the CD, the only evidence of delivery of the CD is the
CD itself.

 A CD is an instrument containing an acknowledgment by a bank
that a sum of money has been received by the bank and a promise by
the bank to repay the sum of money. Tex. Bus. & Com. Code Ann. §
3.104(j) (Vernon Supp. 2000); May v. Walter, 956 S.W.2d 138, 142
(Tex. App.--Amarillo 1997, writ denied). The CD in question states that
it "evidences a deposit in the names of Hazel M. Edwards or Maria
Concepcion Pena." A notation on the certificate states that Pena's
name was added on June 9, 1989.

 When a person adds a name to a CD, the person adding the name
retains ownership in the CD as a payee. Yates v. Blake, 491 S.W.2d
751, 754 (Tex. Civ. App.--Corpus Christi 1973, no writ). By keeping her
own name on the CD, Hazel Edwards did not divest herself absolutely
and irrevocably of her ownership in the CD, but rather retained
ownership in the CD. She still had the power to exchange the
document for cash at any time. Id. (party who added a name to
certificates of deposit retained ownership as payee and thus had the
power to delete the added name at any time and the power to exchange
the documents for cash). The fact that Pena had possession of the
certificate paper does not confer ownership upon her because a CD is
intangible personal property. May v. Walter, 956 S.W.2d 138, 142 (Tex.
App.--Amarillo 1997, writ denied). The physical certificate is simply a
record of the debt owed by the bank, it is not the property. Id.

 In the case now before us, there is no evidence that Hazel
Edwards made a completed gift of the CD to Pena. In fact, the evidence
clearly establishes that the gift was not completed. The evidence of
delivery of the gift, in the form of the CD, shows that Hazel Edwards, by
retaining an interest in the CD, had not divested herself, absolutely and
irrevocably, of her ownership of the property that Pena claims to have
received as a gift from Hazel Edwards, nor was there an unconditional
vesting of ownership rights in Pena. Pena did not have ownership of
the CD because the gift had not been completed. Yates, 491 S.W.2d at
754.

Conversion and Fraud


 Appellant argues that, because Hazel Edwards did not complete
the gift of the CD, Pena lacked ownership in the CD and, therefore, the
jury could neither find that appellant had converted the CD, nor that he
had committed fraud in obtaining the certificate from Pena. 

 Conversion is the wrongful exercise of dominion and control over
another's property in denial of or inconsistent with that person's rights. 
Superior Phones, Ltd., v. Cherokee Com. Inc., 964 S.W.2d 325, 331
(Tex. App.--Corpus Christi 1998, pet. denied). In the case now before
this court, the property in question is the CD and, as discussed, Pena
did not own the CD. Because Pena did not own the CD, appellant did
not exercise dominion and control over Pena's property in denial of her
ownership rights. There is no evidence to support the jury's finding
that appellant committed conversion against Pena. We now address
the question of fraud.

 A party asserting common-law fraud must show that:

(1) a material representation was made; (2) the
representation was false; (3) when the representation was
made, the speaker knew it was false or made it recklessly
without any knowledge of the truth and as a positive
assertion; (4) the representation was made with the
intention that it be acted upon by the other party; (5) the
party acted in reliance upon the representation; and (6) the
party suffered injury.


Johnson & Higgins, Inc. v. Kenneco Energy, 962 S.W.2d 507, 524 (Tex.
1998). 

 In the instant case, Pena alleged that appellant made
misrepresentations to her in order to obtain the CD from her and use it
to purchase another CD solely in the name of Hazel Edwards. Because
the new CD did not include her name as a payee, Pena was unable to
redeem it as she could have done with the original CD. The harm Pena
claims to have suffered is the loss of the CD. 

 As discussed above, Pena did not own the CD; therefore, there is
no evidence that she suffered any injury. Pena lost nothing because
she owned nothing. Pena has failed to show any injury which may
have resulted from appellant's representations. Further, because the
CD listed Hazel Edwards as a payee, appellant could have redeemed the
CD at the bank without the actual physical certificate. Nothing
appellant told Pena in the course of obtaining the physical certificate
was material, as he did not need the paper to access the money. Fraud
requires material misrepresentation. Johnson & Higgins, Inc., 962
S.W.2d at 524. There is no evidence to support the jury's finding of
fraud. 

 Appellant's second and third issues are sustained. We find that
there is no evidence to support the jury's findings that appellant had
committed conversion and fraud. Therefore, we reverse the judgment
of the trial court and render judgment that the appellee, plaintiff in the
trial, take nothing. 

 We do not address appellant's fourth issue, which challenges the
amount of the damages awarded by the trial court, because our ruling
as to the second and third issues renders this issue unnecessary to the
final disposition of this appeal. Tex. R. App. P. 47.1. 

Appellant's Counterclaim Against Pena

 Appellant, in a counterclaim, alleged that Pena had breached her
fiduciary duty to Hazel. With his sixth and final issue on appeal,
appellant challenges the jury's finding that Pena did not breach her
fiduciary duty to Hazel Edwards. Appellant argues that the evidence
established that Pena breached her fiduciary duty as a matter of law, or
in the alternative, that the evidence was factually insufficient to support
the jury's finding. Because he brought the claim against Pena for
breach of fiduciary duty, appellant, as the plaintiff for this cause of
action, bore the burden of proof at trial. See Maritime Overseas Corp.
v. Ellis 977 S.W.2d 536, 538 (Tex. 1996)(plaintiff bears the burden of
proof).

Legal and Factual Sufficiency Standards of Review


 When a party bearing the burden of proof raises a legal sufficiency
challenge to an adverse jury finding, we apply a two-part test. Hickey
v. Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990,
writ denied). First, we examine the record for evidence supporting the
finding of fact. Id. If no evidence supports the finding, we then
"determine from the record whether the contrary proposition is
established as a matter of law." Id.

 When a party who bears the burden of proof challenges the factual
sufficiency of the evidence to support a jury's adverse finding, the party
must show that the finding is "against the great weight and
preponderance of the evidence." Croucher v. Croucher, 660 S.W.2d 55,
58 (Tex. 1983); Correa v. General Motors Corp., 948 S.W.2d 515, 519
(Tex. App.--Corpus Christi 1997, no writ). When reviewing a jury
verdict to determine the factual sufficiency of the evidence, we must
consider all the evidence, and set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We
may not reverse "simply because we conclude the evidence
preponderates toward an affirmative jury finding." Correa, 948 S.W.2d
at 519. When reviewing the evidence, we must bear in mind that it is
the jury's role, not that of the appellate court, to judge the credibility of
the witnesses, assign the weight to be given the testimony, and to
resolve inconsistencies and conflicts in the witnesses' testimony. 
Corpus Christi Teachers' Credit Union v. Hernandez, 814 S.W.2d 195,
197 (Tex. App.--San Antonio 1991, no writ).

The Fiduciary Duty Evidence 


 Texas law recognizes that even informal relationships may give
rise to a fiduciary duty. Crim Truck & Tractor v. Navistar Int'l Transp.
Corp., 823 S.W.2d 591, 594 (Tex. 1992); Texas Bank & Trust Co. v.
Moore, 595 S.W.2d 502, 507 (Tex. 1980). A fiduciary relationship may
arise when a person trusts in and relies upon another person, whether
the relationship is moral, social, domestic or personal, and the trust and
reliance has been betrayed. Crim Truck & Tractor Co., 823 S.W.2d at
594. Much of the evidence going to the claim of fiduciary duty
was testimony. Several witnesses testified that Hazel Edwards was
generous and often gave gifts to people close to her, including Pena. 
Witnesses testified that Pena had been a long-time, helpful, companion
of Hazel Edwards for many years and that she had been particularly
helpful as Hazel's health declined. Pena was the first person to suggest
that Hazel should be placed under a guardianship. Although appellant
brought forth documentary evidence and testimony that suggested that
Pena may have been involved in depleting Hazel's estate, Pena
countered with testimony that the expenses were either justified or
were attributable to the actions of persons other than Pena. Pena was
with Hazel when Hazel passed away. 

 Appellant directs us to the testimony from witnesses that Hazel
had expressed fears that Pena would have her placed in a nursing
home. Hazel's expressions of fear were made in the months preceding
Hazel being declared incompetent and placed under the guardianship
of appellant. The jury could reasonably have believed Hazel's fears
were a product of the dementia which ultimately required that she be
declared incompetent. Furthermore, it is also not necessarily evidence
of bad intent on Pena's part that she wanted Hazel placed in a nursing
home: the evidence indicates that as Hazel's health declined she
required a great deal of care on a daily basis.

 Because the evidence addressing Pena's alleged breach of
fiduciary duty is mainly testimonial, to determine whether Pena had
betrayed Hazel's trust would require determinations as to the credibility
of the testifying witnesses. We do not pass upon the witnesses'
credibility; that is a determination reserved to the judgment of the jury. 
Maritime Overseas Corp., 971 S.W.2d at 407; Corpus Christi Teachers'
Credit Union, 814 S.W.2d at 197. There was ample testimony that
Pena did not violate Hazel's trust, but rather, that she was a loyal
employee and friend. There is evidence supporting the jury's finding
that Pena did not breach her fiduciary duty to Hazel Edwards, and the
finding is not contrary to the great weight and preponderance of the
evidence. Appellant's sixth issue is overruled.

Conclusion

 The district court had jurisdiction over the suit now before us on
appeal. The evidence is legally and factually sufficient to support the
finding by the jury that Pena did not violate a fiduciary duty to Hazel
Edwards. Appellant, acting as guardian of Hazel Edwards, was not
entitled to judicial immunity; however, no evidence supports the jury's
finding that Pena received the disputed CD as a gift. Because the jury's
findings of conversion and fraud require that Pena owned the CD as a
result of receiving it as a gift, no evidence supports these findings. The
judgment of the trial court is REVERSED and judgment RENDERED for
the appellant.


 
 

 LINDA REYNA YAÑEZ

 Justice



Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the

11th day of January, 2001.

1. Retired Chief Justice Robert Seerden assigned to this Court by
the Chief Justice of the Supreme Court of Texas pursuant to Tex.
Gov't Code Ann. § 74.003 (Vernon 1998).