Jeane BRUNSON, in her Capacity as Parker County Clerk; Ben Long, in his Capacity as County Judge, Parker County; Danny Choate, in his Capacity as County Commissioner; Mack Dobbs, in his Capacity as County Commissioner; Charlie Horton, in his Capacity as County Commissioner; and Rena Peden, in her Capacity as County Commissioner, Appellants,

v.

Mark and Diana WOOLSEY, Appellees.

No. 2–00–307–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 6, 2001.

---

Law Office of Sue Walker, Sue Walker, Arlington, Bourland, Kirkman, Seidler & Evans, L.L.P., Thomas Michel, Fort Worth, for Appellants.

Mark Woolsey and Diana Woolsey, for Appellees.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

In this declaratory judgment action, Parker County Clerk Jeane Brunson, County Judge Ben Long, and County Commissioners Danny Choate, Mack Dobbs, Charlie Horton, and Rena Peden (collectively, Appellants) appeal from the trial court's order granting summary judgment in favor of Appellees Mark and Diana Woolsey (the Woolseys). Appellants raise five issues challenging the trial court's order, arguing that (1) the court's judgment is a nullity because it contains a "reverse Mother Hubbard clause"; (2) the Woolseys lack standing to bring this action; (3) the Woolseys failed to establish their right to summary judgment as a matter of law; (4) the court's order grants improper summary judgment relief; and (5) the Woolseys are not entitled to recover attorney's fees. Because we determine that the Woolseys do not possess standing to maintain this suit, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The Woolseys purchased Lot 13, Block 3 of the Oakwood Estates subdivision on June 20, 1995. The original plat for Oakwood Estates was prepared by James E. Duncan, the owner of the land, and accepted by the commissioners court of Parker County on June 30, 1978. The plat was then filed with the county clerk. After purchasing their lot, the Woolseys began efforts to subdivide and revise the plat of the lot. They planned to build their home on one lot and to sell the remaining lot. On September 19, 1995, the Parker County Commissioners Court held a public hearing regarding the Woolseys' proposed plat revision of Lot 13, Block 3. Eight property owners in Oakwood Estates spoke at the hearing in opposition to the revised plat. Several other property owners submitted letters of opposition for the court's consideration. At the close of the hearing, the commissioners voted to deny the Woolseys' requested plat revision.

On March 7, 1997, the Woolseys filed a declaratory judgment action against Appellants. Specifically, the Woolseys sought a construction of section 232.009 of the Texas Local Government Code, governing plat revisions,[1] and a declaration that the county clerk of Parker County accept the filing of a revised plat for Lot 13, Block 3 of Oakwood Estates without the permission of the commissioners court. The trial court granted summary judgment for the Woolseys. On appeal, this court reversed and remanded, holding that the Woolseys' motion for summary judgment was fatally defective in that it failed to state any grounds on which it was based.[2]

1. *See* TEX. LOC. GOV'T CODE ANN. § 232.009 (Vernon Supp.2002).

2. *Brunson v. Woolsey,* No. 02–98–00167–CV (Tex.App.—Fort Worth July 8, 1999, no pet.) (not designated for publication).

On April 7, 2000, the Woolseys filed a second motion for summary judgment in the trial court. The Woolseys moved for summary judgment under Rule 166a(a) of the Texas Rules of Civil Procedure, arguing that the proposed plat revision satisfies the requirements of the applicable statute and, therefore, the commissioners court was without discretion to refuse approval of the revised plat.[3] The Woolseys also asserted their entitlement to judgment as a matter of law under Rule 166a(i) on the grounds that there is no evidence that their plat revision would interfere with the "established rights" of any landowner in Oakwood Estates, as that term is used in section 232.009(d)(1) of the local government code.[4] In response, Appellants argued that the Woolseys lack standing to seek a plat revision under section 232.009 and, alternatively, that the Woolseys have not shown that their revised plat complies with the requisites of that statute.[5] Additionally, Appellants challenged the propriety of the Woolseys' no-evidence summary judgment motion.

After a hearing, the trial court granted the Woolseys' motion for summary judgment, finding that their proposed plat revision complies with the applicable statutes and subdivision regulations and does not violate the established rights of any property owner within Oakwood Estates. The court ordered the county commissioners to enter an order approving the Woolseys' plat revision and ordered the county clerk to file the revision in the plat records of Parker County. The court awarded attorney's fees to the Woolseys in the amount of $4,000.

## FINALITY OF THE JUDGMENT

■ In their first issue, Appellants contend that the summary judgment in the instant case is a nullity because it contains a "reverse Mother Hubbard clause." The trial court's order grants summary judgment in favor of the Woolseys, orders the commissioners court to approve the plat revision, and orders the county clerk to file the revised plat. The last sentence of the order states: "All relief requested and expressly granted is denied." Appellants point out that this language effectively denies all of the relief previously granted in the judgment. Accordingly, Appellants insist that the judgment is not final and, therefore, not appealable because it does not dispose of all issues and parties.[6] Appellants rely on the Texas Supreme Court's decision in *Mafrige v. Ross* that the inclusion of a "Mother Hubbard" clause in an order granting summary judgment, reciting that all relief not expressly granted is denied, makes even an otherwise interlocutory judgment final for the purposes of appeal.[7] Following Appellants' argument to its logical conclusion, then, the insertion of a "reverse" Mother Hubbard clause into a trial court's order granting summary judgment, denying all relief expressly granted in the order, makes an otherwise final summary judgment interlocutory for appeal purposes. Because the Texas Supreme Court has altered its position on the extent to which it views the use of "Mother Hubbard"

---

3. *See* Tex.R. Civ. P. 166a(a); Tex. Loc. Gov't Code Ann. § 232.009.

4. *See* Tex.R. Civ. P. 166a(i); Tex. Loc. Gov't Code Ann. § 232.009(d)(1).

5. *See* Tex. Loc. Gov't Code Ann. § 232.009(b), (d)(1)–(2).

6. *See City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex.1988); *Teer v. Duddlesten,* 664 S.W.2d 702, 703 (Tex.1984).

7. 866 S.W.2d 590, 590 (Tex.1993), *overruled by Lehmann v. Har–Con Corp.,* 39 S.W.3d 191 (Tex.2001).

language in summary judgment orders as indicative of finality, we disagree with Appellants' argument on this issue.

▮▮▮ After the parties filed briefs in this case, the court held in *Lehmann* that the inclusion of a Mother Hubbard clause does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal, thus overruling *Mafrige* to the extent that case states otherwise.[8] The court clarified that an order or judgment is final for purposes of appeal if it "actually disposes of every pending claim and party" or it "clearly and unequivocally states that it finally disposes of all claims and all parties."[9] An appellate court may review the record to determine whether an order disposes of all claims and parties.[10] "The language of an order or judgment cannot make it interlocutory when, in fact, on the record, it is a final disposition of the case."[11]

In the case now before us, Appellants do not contend that the substance of the trial court's "Final Order Granting Plaintiffs' Motion for Summary Judgment," absent its last sentence, does not dispose of all claims brought by the Woolseys. Because the order actually disposes of every pending claim, we decline to frustrate the trial court's intent by assigning undue significance to what was likely an oversight in the omission of the word "not" in an attempt to draft a standard Mother Hubbard clause. Accordingly, we hold that the trial court's judgment is final for purposes of

this appeal. We overrule Appellants' first issue.

## STANDING

▮▮▮ In their second issue, Appellants argue that the trial court erred in granting the Woolseys' motion for summary judgment because the Woolseys lack standing to invoke the plat revision provisions of local government code section 232.009.[12] Standing is a necessary component of subject matter jurisdiction, which is essential to the authority of a court to decide a case.[13] Standing is a question of law.[14] Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate.[15]

The statute at issue here provides in pertinent part:

§ 232.009. Revision of Plat

(b) *A person who has subdivided land* that is subject to the subdivision controls of the county in which the land is located may apply in writing to the commissioners court of the county for permission to revise the subdivision plat filed for record with the county clerk.

. . . .

(d) During a regular term of the commissioners court, the court shall adopt an order to permit the revision of the subdivision plat if it is shown to the court that:

(1) the revision will not interfere with the established rights of any

---

**8.** 39 S.W.3d at 203–04.

**9.** *Id.* at 205.

**10.** *Id.* at 205–06.

**11.** *Id.* at 200.

**12.** *See* TEX. LOC. GOV'T CODE ANN. § 232.009.

**13.** *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex.2000); *Tex. Ass'n of*

*Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443, 445–46 (Tex.1993).

**14.** *A & W Indus., Inc. v. Day*, 977 S.W.2d 738, 741 (Tex.App.—Fort Worth 1998, no pet.).

**15.** *Pankhurst v. Weitinger & Tucker*, 850 S.W.2d 726, 729 (Tex.App.—Corpus Christi 1993, writ denied).

owner of a part of the subdivided land; or

(2) each owner whose rights may be interfered with has agreed to the revision.[16]

■ Appellants argue that under the plain language of the statute, "[a] person who has subdivided land" refers to the original developer of a subdivision, who prepared, filed, and recorded the original plat.[17] The Woolseys interpret "has" as synonymous with "owns," arguing that because they are "persons" who own land that has been subdivided, they possess standing to apply to the commissioners court for permission to revise the subdivision plat under section 232.009(b). The crux of the issue before us, therefore, is whether "subdivided," as used in section 232.009(b), is an adjective describing "land," or a part of the verb, "has subdivided."

■ The construction of section 232.009(b) of the Texas Local Government Code is a matter of first impression. In *Commissioners Court of Grayson County v. Albin*,[18] the Texarkana Court of Appeals construed local government code section 232.041, a provision substantially identical to the statute now before us, except that it applies to the revision of subdivision plats in "economically distressed counties." [19]

In that case, Clifford Albin, the owner and developer who had submitted the original plat for the subdivision sought permission from the commissioners court to revise the plat.[20] Appellants rely on *Albin* in support of their position that only the original land owner who submitted the plat for the subdivision is authorized to seek a revision of the plat under section 232.009. Thus, according to Appellants, only Duncan, as the developer of Oakwood Estates, has standing to request permission to revise the plat under section 232.009(b).

■ Our primary objective in construing a statute is to determine and give effect to the legislature's intent.[21] We must construe a statute as written and, if possible, ascertain legislative intent from the statute's language.[22] In doing so, we look first to the plain and common meaning of the statute's words.[23] We also construe the statute in the light of the entire body of law existing at the time of its enactment.[24] Further, we consider the entire statute, not simply the disputed portions.[25] Each provision must be construed in the context of the entire statute of which it is a part.[26] "It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose." [27] Similarly, every word excluded from a statute must also be pre-

---

16. Tex. Loc Gov't Code Ann. § 232.009(b), (d) (emphasis added).

17. *See id.* § 232.001 (Vernon Supp.2002).

18. 992 S.W.2d 597 (Tex.App.—Texarkana 1999, pet. denied).

19. *See* Tex. Loc. Gov't Code Ann. § 232.041 (Vernon 1999).

20. *Albin*, 992 S.W.2d at 599.

21. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998).

22. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985).

23. *Liberty Mut. Ins.*, 966 S.W.2d at 484.

24. *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 454 (Tex.App.—Austin 1989, writ denied).

25. *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994).

26. *Id.*

27. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981).

sumed to have been excluded for a purpose.[28]

Appellants contend that section 232.009 establishes two exclusive categories of people: "[a] person who has subdivided land" and "nondeveloper owners." Section 232.009(c) provides for notice of the request to revise the subdivision plat:

> After the application is filed with the commissioners court, the court shall publish notice of the application in a newspaper of general circulation in the county.... Except as provided by Subsection (f), *if all or part of the subdivided tract has been sold to nondeveloper owners, the court shall also give notice to each of those owners by certified or registered mail, return receipt requested, at the owner's address in the subdivided tract.*[29]

Appellants argue that "[a] person who has subdivided land" refers to the developer of a subdivision who prepares and submits the original plat application and files the plat with the county clerk.[30] In contrast, the phrase "nondeveloper owners" refers to people like the Woolseys, who are owners of land in the subdivided tract.

Section 232.008 of the local government code, pertaining to the cancellation of subdivisions, provides in subsection (b):

> *A person owning real property in this state that has been subdivided* into lots and blocks or into small subdivisions may apply to the commissioners court of the county in which the property is located for permission to cancel all or part of the subdivision, including a dedicated easement or roadway, to reestablish the property as acreage tracts as it existed before the subdivision.[31]

Clearly, this section authorizes an owner of land in a subdivision who is not the original developer to submit an application for the cancellation of the subdivision. A comparison of section 232.008(b) and 232.009(b) reveals that the legislature could have defined those authorized to seek revision of a subdivision as it did those persons eligible to seek the cancellation of all or part of a subdivision. That is, the legislature could have expressly provided that an owner of subdivided land could request permission to revise the subdivision plat. Because the legislature chose not to so provide, we must presume that its intent was to allow only the original developer to revise the subdivision plat under section 232.009(b). Our conclusion is strengthened by the fact that sections 232.008 and 232.009 were enacted as part of the local government code in the same legislative session.[32] In addition, we note that section 232.008(b) utilizes the passive verb form, "has been subdivided," instead of employing "subdivided" as an adjective. Similarly, we construe "has subdivided" in section 232.009(b) to refer to the actions of what we might term the "developer owner" in preparing the original plat.

■ The attorney general, in interpreting the notice provision of the prior version of section 232.009, noted that this section "provides for the revision *by developers* of subdivision plats subject to the subdivision controls of the county and filed

---

**28.** *Tex. Dep't of Pub. Safety v. Harris,* 33 S.W.3d 406, 409 (Tex.App.—Fort Worth 2000, no pet.).

**29.** Tex. Loc. Gov't Code Ann. § 232.009(c) (emphasis added).

**30.** *See id.* § 232.009.

**31.** *Id.* § 232.008(b) (Vernon Supp.2002) (emphasis added).

**32.** *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, secs. 232.008–.009, 1987 Tex. Gen. Laws 707, 1005–06.

for record with the county clerk."[33] While not controlling on this court, the attorney general's opinion is persuasive authority.[34] We agree with this construction of section 232.009(b) and hold that this statute permits a developer to request permission to revise a subdivision plat, but contains no provision authorizing a "nondeveloper owner" of land in the subdivided tract to revise the plat filed for record with the county clerk.

Because it is undisputed that the Woolseys are not the developers of the Oakwood Estates subdivision, they have no right to revise the subdivision plat under section 232.009(b). Consequently, they lack standing to proceed under that statute. We, therefore, sustain Appellants' second issue. Having sustained Appellants' challenge to the subject matter jurisdiction of the trial court, we need not address the remainder of Appellants' arguments, which challenge the propriety of the trial court's granting of summary judgment in favor of the Woolseys.

### CONCLUSION

We hold that the trial court erred in granting the Woolseys' motion for summary judgment because they do not have standing to seek a declaratory judgment under section 232.009 of the local government code. Accordingly, we reverse the trial court's order granting summary judgment in their favor and render judgment denying the Woolseys' motion for summary judgment. Because Appellants did not seek affirmative relief in the trial court based on the Woolseys' lack of standing, we remand this case to the trial court for further proceedings consistent with this opinion.

---

**33.** Op. Tex. Att'y Gen. No. JM–699 (1987) (emphasis added); *see* Act of May 29, 1983, 68th Leg., R.S., ch. 846, §§ 1, 5, 1983 Tex. Gen. Laws 4810, 4810–11.

**34.** *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 82 (Tex.1997).