

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00403-CV

_____

J.A.S., Appellant

V.

A.R.D., Appellee

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-582401-15

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I.  Introduction

In seven issues, appellant J.A.S. (John)[1] appeals portions of the trial court's final decree of divorce, which ended his marriage to pro se appellee A.R.D. (Amy), appointed them as their child's joint managing conservators, divided their marital estate, and awarded Amy a portion of her attorney's fees.  John does not, however, appeal the portions of the divorce decree granting the divorce and dissolving the marriage.  We affirm in part and reverse and remand in part.

## II.  Factual and Procedural Background

### A.  The Marriage, Birth of Greg, and Divorce Petition

John and Amy were married on May 26, 2015.  At the time they were married, Amy was several months pregnant with their child.  The couple separated a few months later, and John filed the underlying petition for divorce on September 1, 2015.  On October 14, their son, Greg, was born.

Because he had witnessed Amy taking drugs during her pregnancy, John and his mother contacted the Texas Department of Family and Protective Services (DFPS).[2]  John testified that a DFPS investigator came to the hospital and tested Amy

---

[1]To preserve the privacy of the child, we identify the parties by pseudonyms. *See* Tex. Fam. Code Ann. § 109.002(d).

[2]At trial, Amy acknowledged that she was using hydrocodone and Tylenol 3 while she was pregnant.

for drugs and that John took Greg home from the hospital. John was appointed as the temporary sole managing conservator, and Amy was ordered to submit to random drug testing for the next six months. Amy submitted to some drug tests but failed to report for several others. She also failed to remain current on her court-ordered monthly child support payments.

## B. The Bench Trial and Letter Ruling

The parties waived a jury and on June 12, 2017, appeared for a bench trial. At trial, Amy's wedding ring was among the disputed topics. John testified that he had purchased a wedding ring for Amy before they were married, but shortly thereafter, Amy pawned the ring for $250. John discovered what Amy had done when he found the pawn shop receipt, so he went to the pawn shop and bought the ring back. But at trial, John claimed that the ring was no longer in his possession because he had sold it for $500 to pay for a portion of his attorney's fees. Amy testified that she had intended to get her ring back because when she pawned it, she did not mean to sell it but to obtain a loan against it.

Before trial Amy filed a verified "inventory and appraisement" identifying as her separate property the "[w]edding ring worth $2000 that is in the possession of [John]." And at trial, the court admitted, without objection, Amy's proposed property division as "Respondent's Exhibit 3," in which Amy again identified a "wedding ring set that is currently in the possession of [John]" as her separate property. However, Amy's Exhibit 3 did not provide a valuation for the ring, Amy did not testify to a

3

$2,000 valuation, and Amy's verified inventory and appraisement containing the $2,000 valuation was not admitted into evidence.

Other relevant evidence adduced at trial included:

- "Petitioner's Exhibit 18," a proposed parenting plan in which John specifically requested that Amy submit to a 12-panel nail or hair follicle drug test and that she obtain four consecutive negative test results before she be permitted to have possession of or access to Greg. The proposal also separately requested that if Amy did produce four consecutive negative results, that she "shall thereafter submit to random drug testing" at dates and times determined by a private testing facility, but no more than "two (2) times during any thirty (30) day period or more than twelve (12) times during the span of any twelve-month (365 day) period."

- Testimony from John that he had received a tax return of approximately $3,100.

- Testimony from John that he had purchased a 2012 Toyota Corolla, ownership of which he had transferred to his parents but that he was still paying the note because the vehicle was worth $4,500 less than the remaining balance due on the note.

- Testimony from John that he maintains a "Snap-on Credit" account for work equipment purchases, which had a balance of approximately $2,800.

- Testimony from John and Amy and from their respective counsel on attorney's fees. John's counsel testified and introduced evidence to support that John had incurred $19,333.29 in attorney's fees, of which John had paid $12,800, and Amy's counsel testified and introduced evidence to support that Amy had incurred $6,002.50 in attorney's fees, of which Amy had paid $1,500.

In a July 6, 2017 letter ruling, the trial court named John and Amy joint managing conservators of Greg, and John was awarded the exclusive right to

4

designate Greg's primary residence "within Tarrant and counties contiguous to Tarrant County and to Hood County, Texas."

The letter ruling also granted Amy "step-up access" to Greg, with Step I being supervised access for twelve weeks and Step II being unsupervised access for an additional twelve weeks. Upon completion of both steps, Amy could receive access as provided in the standard possession order. However, the letter ruling made Amy's access and possession "contingent upon completion of a negative nine-panel nail testing done randomly by [a private testing facility] and bi-monthly as requested by [John.]" The letter ruling provided that upon "two successive negative drug tests, the random drug testing is to cease. Upon receiving a positive drug test result, . . . the possession schedule will return to supervised . . . to be held at [John's] residence."

The letter ruling also provided a division of property that awarded John and Amy the assets in their possession, the balances in their bank accounts, and their retirement accounts, if any. John received the 2016 tax refund and the car. The division awarded John the debt obligation for a "Snap-on Credit Account." Finally, Amy was awarded her wedding ring, and John was instructed to return the ring or pay Amy's attorney $2,000 as a portion of Amy's attorney's fees:

> [John] is to return the separate property wedding ring of the wife (her value of approximately $2,000) to [Amy] on or before the date of August 1, 2017. If [John] does not have the wedding ring and in lieu of returning it, he is to pay $2,000 to [Amy's counsel] at her business address for a portion of [Amy's] attorney fees on or before August 1, 2017, and for which, if not submitted by that date, [Amy's counsel] is

awarded a judgment in the amount of $2,000 against [John] . . . with lawful interest, for which she may pursue her options to collect.

Finally, the letter ruling requested that John's counsel prepare an order reflecting the letter ruling.

## C. The Divorce Decree and Separate Findings

As instructed, John's counsel prepared and submitted a final divorce decree, which the trial court signed. However, the divorce decree, approved as to form by both parties' counsel, failed to list the car, the 2016 tax refund, and the "Snap-on Credit Account" in the property division. It also characterized the wedding ring as community property awarded to Amy.[3]

The divorce decree also ordered Amy to submit to drug screening at a private testing facility and that Amy "shall submit to such analysis bi-monthly" as requested by John. The divorce decree ordered that "upon receiving a positive drug test result, . . . the possession schedule of [Amy] will return to supervised as in Step I[.]" The decree further ordered that "upon two successive negative drug tests, the random drug testing shall cease."

John filed a request for findings of fact and conclusions of law pursuant to rules of civil procedure 296 and 297, *see* Tex. R. Civ. P. 296, 297, and a motion for

---

[3]As noted by John, while the ring was Amy's separate property at the time she pawned it, it became community property when John purchased it back during the marriage. *See* Tex. Fam. Code Ann. § 3.002 (providing that community property consists of the property other than separate property acquired by either spouse during the marriage).

new trial challenging the division of the marital estate and the appointment of Amy as joint managing conservator. In its findings of fact and conclusions of law, the trial court found, among other findings, that possession varied from the standard possession order because of Amy's prior positive drug tests, that Amy owned the wedding ring before their marriage, and that the ring's value was $2,000. Because the trial court did not rule on John's motion for new trial, it was overruled by operation of law. This appeal followed.

## III. Discussion

John raises seven issues on appeal. While this appeal was pending, Amy's trial counsel filed a notice of nonrepresentation. Amy did not file an appellee's brief.

### A. Conservatorship Decision

In his first issue, John argues that the trial court erred by appointing Amy as a joint managing conservator when the testimony at trial showed that she had abused drugs while pregnant and during the pendency of the divorce, was arrested for driving while intoxicated (DWI) shortly after Greg was born, failed to appear for her court-ordered random drug testing, failed to pay any temporary child or medical support pursuant to the temporary orders, did not demonstrate an ability to provide a safe environment for Greg, and did not testify that her appointment as a joint managing conservator would be in Greg's best interest.

7

### 1. Standard of Review

We review a trial court's decision regarding the conservatorship of a child for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re S.T.*, 508 S.W.3d 482, 489 (Tex. App.—Fort Worth 2015, no pet.). An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to reasonably support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g); *S.T.*, 508 S.W.3d at 489. It is for the factfinder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Chavez v. Chavez*, 148 S.W.3d 449, 457 (Tex. App.—El Paso 2004, no pet.); *see also In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied).

In an abuse of discretion review, legal and factual insufficiency are not independent grounds for asserting error but are merely relevant factors in assessing whether a trial court abused its discretion. *S.T.*, 508 S.W.3d at 489. Thus, in applying the abuse of discretion standard, we use a two-pronged analysis: whether the trial court had sufficient evidence upon which to exercise its discretion and whether the trial court erred in applying its discretion. *Id.*; *see also Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679–80 (Tex. App.—Fort Worth 2015, no pet.) (setting forth standards for legal and factual sufficiency).

When reviewing a trial court's decision regarding conservatorship of a child, we recognize that the trial court "is in the best situation to observe the demeanor and personalities of the witnesses and can 'feel the forces, powers, and influences that

8

cannot be discerned merely by reading the record.'" *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.) (quoting *In the Interest of T.*, 715 S.W.2d 416, 418 (Tex. App.—Dallas 1986, no writ)). Thus, we will reverse a trial court's determination of the best interest of the child only upon a determination of an abuse of discretion. *Id.*

### 2. Applicable Law

In determining the issues of conservatorship and possession of and access to a child, the best interest of the child shall always be the primary consideration of the court. Tex. Fam. Code Ann. § 153.002. By statute, it is in the best interest of the child for the child's parents to be appointed joint managing conservators. *See id.* § 153.131(a), (b) (creating a rebuttable presumption that the appointment of a child's parents as joint managing conservators is in the child's best interest). This parental presumption "is based upon the natural affection usually flowing between parent and child." *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). Consequently, a parent seeking to be appointed sole managing conservator of a child bears the burden to rebut the statutory best-interest presumption. *See Martinez v. Gonzalez*, 553 S.W.3d 509, 514 (Tex. App.—El Paso 2018, no pet.). Only if the court finds that the appointment of a parent or parents would significantly impair the child's physical health or emotional development or that there is a history of family violence involving the parents should a trial court reject this statutory presumption. Tex. Fam. Code Ann. § 153.131(a), (b).

9

### 3. Analysis

Although John presented evidence that Amy had failed to appear for a random drug test, Amy explained that she failed to appear because she did not have a phone and because her mother and stepfather, with whom she was living at the time, were out of town and did not relay the message to her. Amy also testified that she did not have the financial means to obtain the random drug tests. Amy claimed that her missed child support payments were due to her lack of full-time employment but added that she had recently obtained full-time employment. She also testified that she presently had a stable living environment in Hood County with a spare room for Greg. And although Amy acknowledged she had a drug problem in the past, she testified that she had "been clean since January of 2016" and that she had attended rehab only to get her son back, not because she had a drug problem.

Conduct involving past drug use is relevant in a best interest determination, but past misconduct alone is not enough to overcome the parental presumption because conservatorship determinations are to be made based on whether the parent is presently suitable. *See In re K.R.B.*, No. 02-10-00021-CV, 2010 WL 3928727, at *5 (Tex. App.—Fort Worth Oct. 7, 2010, no pet.) (mem. op.) ("When determining fitness of a parent, the material time to consider is the present."); *May v. May,* 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied) ("If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not

10

controlling."). Here, Amy testified that she had "been clean" for over a year, and John does not direct us to evidence in the record that she was still using drugs or any other evidence sufficient to overcome the presumption that she should be a joint managing conservator of Greg. *See In re S.W.H.*, 72 S.W.3d 772, 777–78 (Tex. App.—Fort Worth 2002, no pet.) (holding trial court abused its discretion by denying mother managing conservatorship despite evidence that four years earlier she "had a severe addiction and that she was incarcerated because she twice tested positive for drug use in violation of her probation" when no evidence was presented that mother had not remained clean since or that she was not presently a suitable conservator).

John also challenges the trial court's decision to appoint Amy as a joint managing conservator because "[t]here was no evidence adduced at trial that it would be in the child's best interest for [Amy] to be appointed joint managing conservator." This argument is unavailing because it reverses the burden of proof. John bore the burden to present evidence to overcome the presumption that Amy should be appointed as joint managing conservator. *See* Tex. Fam. Code Ann. § 153.131(b); *Martinez*, 553 S.W.3d at 514. Based on this record, we hold the trial court did not abuse its discretion because John failed to overcome the presumption that appointing Amy as joint managing conservator was in the best interest of Greg. *See Naguib v. Naguib*, 137 S.W.3d 367, 372 (Tex. App.—Dallas 2004, pet. denied).

Accordingly, we overrule John's first issue.

11

## B. Conditions on Amy's Access and Possession

In his second issue, John asserts that the trial court abused its discretion by requiring only "two successive negative [finger]nail [drug] tests, when . . . the undisputed evidence and agreement of the parties was that it would be in the child's best interest for [Amy] to submit to periodic drug testing." Relatedly, in his third issue, John asserts that the trial court erred by ordering Amy "stair-up" visitation of Greg, "expressly conditioned on [Amy's] abstaining from the use of drugs, and [Amy's] compliance with the provisions of this order regarding drug testing," because there is no way to enforce Amy's compliance with either Step I or Step II before she is permitted to progress to the standard possession order.

### 1. Applicable Law

As already noted, in determining issues of custody, control, possession, child support, and visitation, we give the trial court wide latitude and will reverse a trial court's order only if it appears from the record as a whole that the court abused its discretion. *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied). The public policy of Texas is to ensure that children enjoy "frequent and continuing contact with parents who have shown the ability to act in the child's best interest" and to "encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." Tex. Fam. Code Ann. § 153.001(a)(1), (3). However, trial courts are permitted to place conditions on a parent's visitation if necessary for the child's best interest. *In re R.D.Y.*, 51 S.W.3d

12

314, 324 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). But "when a court places restrictions or conditions on a conservator's possession rights, the court must specifically define these terms in its decree," *Conn v. Rhodes*, No. 2-08-420-CV, 2009 WL 2579577, at *4 (Tex. App.—Fort Worth Aug. 20, 2009, no pet.) (mem. op.), by stating "in clear and unambiguous terms what is required for the conservator to comply, . . . specific enough to allow the [other] conservator to enforce the judgment by contempt." *Hale v. Hale*, No. 04-05-00314-CV, 2006 WL 166518, at *3 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.). A written order that is equivocal or susceptible to more than one interpretation is not punishable by contempt. *In re Houston,* 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding).

### 2. Application of the Law to the Facts

John does not challenge the trial court's discretion to order Amy to begin with supervised visitation and to graduate to unsupervised visitation conditioned upon Amy returning two consecutive negative drug tests—indeed, John asserts that these conditions were justified by the court's finding that Amy had previous positive drug test results. Rather, his complaint is that Amy does not have to submit to drug tests for a "meaningful period" because the court ordered the drug testing to cease if Amy returned only two consecutive negative results. John further asserts that the trial court erred because there is no way to enforce Amy's compliance with Step I before

13

she can move to unsupervised access in Step II and then to a standard possession

order. We begin by examining the drug testing provisions.

### a. Drug Testing Provisions

The divorce decree states, in relevant part, as follows:

> **IT IS ORDERED** that [AMY] shall submit to drug screening by 9 panel nail at FORENSIC DNA & DRUG TESTING SERVICES, 511 East Weatherford, Fort Worth, Texas 76102, 817.338.0200, or any other facility agreed to in writing by [JOHN] and [AMY].

> **IT IS ORDERED** that [AMY] shall submit to such analysis bi-monthly as requested by [JOHN].

> **IT IS ORDERED** that [AMY] is to appear at the facility with appropriate photographic identification and to provide specimens as requested to conduct the drug screening by nail. [AMY] is **ORDERED** to request the laboratory conducting the drug screening to deliver the results of the drug screening directly to [JOHN], and to sign the appropriate authorizations for such delivery.

> **IT IS ORDERED** that [JOHN] shall pay for all testing ordered herein. IT IS FURTHER ORDERED that upon receiving a positive drug test result, [AMY] shall reimburse [JOHN] for the cost of that drug testing and the possession schedule of [AMY] will return to supervised as in Step I herein to be held at [JOHN'S] residence.

> **IT IS ORDERED** that upon two successive negative drug tests, the random drug testing shall cease.

At the outset, these terms are possibly ambiguous because "bi-monthly" can

mean an occurrence either (1) every two months or (2) twice a month. *See Webster's*

*Third New Int'l Dictionary* 217 (2002) (defining "bi-monthly" as "occurring, appearing,

or done every two months; sometimes:   occurring, appearing, or done twice a

month"); *Garner's Modern English Usage* 114 (4th ed. 2016) (stating "*bimonthly* = every

two months (not 'twice a month')" and suggesting that because "bi- has been used to mean 'occurring twice in a (specified span of time)' so often . . . for the sake of clarity, you might do well to avoid the prefix altogether when possible").

But more importantly, it is also unclear from these terms whether the order contemplates two separate drug testing requirements—(1) "random" drug testing at Forensic DNA & Drug Testing Services, and (2) scheduled, "bi-monthly" drug tests—or just one drug testing requirement to occur bi-monthly but randomly. Although the decree orders Amy to "submit to such analysis bi-monthly," it also provides that upon two consecutive negative test results, "the *random* drug testing shall cease." [Emphasis added.] This is the only reference to "random" drug testing in the decree. But, bi-monthly testing—whether twice a month or once every two months—could be either random or scheduled. Thus, the written order is unclear as to whether Amy would still be required to submit to nonrandom bi-monthly drug tests even if she provided two consecutive negative test results and no longer had to submit to random drug testing.

Because the drug testing provisions are ambiguous, they are not enforceable by contempt. *See Houston,* 92 S.W.3d at 877. Accordingly, we sustain John's second issue.

### b. Stair-up Access and Possession

The divorce decree states, in relevant part, as follows:

**Step I - Supervised Access**

[AMY] shall have the right to supervised access of the child on Wednesday and Friday of each week beginning at 12:00 p.m. and ending at 6:00 p.m.. **IT IS ORDERED** that supervision shall be conducted by the child's maternal grandmother or maternal step-grandfather. **IT IS ORDERED** that on those days, the maternal grandmother or maternal step-grandfather shall pick up the child from [JOHN'S] residence and return the child to [JOHN] at the QUICK TRIP located at Interstate 35 and Highway 187.

**IT IS FURTHER ORDERED** that this step shall begin on the week following July 6, 2017 and shall continue for the following twelve (12) successive weeks.

**IT IS ORDERED** that [AMY] shall move to Step II after twelve (12) successive weeks of access per the schedule as detailed in Step I.

**Step II - Unsupervised Possession**

**IT IS ORDERED** that the following possession and access schedule shall begin the first Saturday following the completion of Step I and shall continue for four (4) months thereafter.

[AMY] shall have the right to possession of the child on Wednesday and Friday of each week beginning at 12:00 p.m. and ending at 6:00 p.m.

[AMY] shall also have the right to possession of the child on the first, third and fifth Saturday of each month beginning at 10:00 a.m. and ending at 6:00 p.m.

**IT IS ORDERED** that at the beginning of each period of possession in Step II, [AMY] shall pick up the child at [JOHN'S] residence and return the child to [JOHN] at the QUICK TRIP located at Interstate 35 and Highway 187 at the end of each period of possession.

**IT IS ORDERED** that [AMY] shall proceed to a Standard Possession Order as detailed herein upon the completion of four (4) successive months of possession and access as detailed in Step II.

16

We agree with John that the provision that Amy "shall" progress to unsupervised access in Step II "after twelve (12) successive weeks of access per the schedule as detailed in Step I" is ambiguous. *Webster's Dictionary* defines "successive" as "following in succession or serial order:  following one upon another:  coming in order:  CONSECUTIVE." *Webster's Third New Int'l Dictionary* 2282 (2002).  Thus, one could read the order as providing that if on week 9, Amy failed to obtain supervised access as described in Step I, she would be required to start back at week 1.  That is to say, she can only get to Step II after 12 consecutive weeks of supervised Step I visitation.  However, one could also read the stair-up provision as permitting Amy to move to unsupervised access in Step II after 12 weeks, regardless of whether she engaged in any supervised access during Step I because the order provides that Amy "*shall* move to Step II after twelve (12) successive weeks of access per the schedule as detailed in Step I" without any requirement that Amy "complete" Step I.  [Emphasis added.]  Furthermore, it is not apparent from the decree what, if anything, must be done to "complete" Step I.

Because the stair-up provisions are ambiguous, they are not enforceable by contempt. *See Houston,* 92 S.W.3d at 877.  Accordingly, we sustain John's third issue.

## C.  Geographic Restriction

In his fourth issue, John complains that there is factually insufficient evidence to support the geographic restriction on his exclusive right to designate the child's primary residence.  In this case, the trial court ordered as follows:

17

**IT IS ORDERED** that the primary residence of the child shall be Tarrant County and counties contiguous to Tarrant County and to Hood County, Texas, and the parties shall not remove the child from Tarrant County and counties contiguous to Tarrant County and to Hood County, Texas for the purpose of changing the primary residence of the child until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

**IT IS FURTHER ORDERED** that [JOHN] shall have the exclusive right to designate the child's primary residence within Tarrant County and counties contiguous to Tarrant County and to Hood County, Texas.

When the trial court appoints joint managing conservators, as in this case, the court must designate the conservator who has the exclusive right to determine the primary residence of the child and must either establish a geographic area within which the conservator shall maintain the child's primary residence or specify that there are no geographic restrictions:

(b)  In rendering an order appointing joint managing conservators, the court shall:

(1)  designate the conservator who has the exclusive right to determine the primary residence of the child and:

(A)  establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; *or*

(B)  specify that the conservator may determine the child's primary residence without regard to geographic location[.]

Tex. Fam. Code Ann. § 153.134(b)(1)(A)–(B) (emphasis added).

18

The trial court enjoyed broad discretion to decide whether a geographical restriction should be imposed, and the evidence at trial proved that John resides in Tarrant County and Amy resides in Hood County, and neither John nor Amy intended to relocate.[4] On this record, we cannot say that the trial court abused its discretion by establishing a geographic restriction to Tarrant County, contiguous counties thereto, and to Hood County. *See Morgan v. Morgan*, 254 S.W.3d 485, 490 (Tex. App.—Beaumont 2008, no pet.) (holding no abuse of discretion in imposing geographic restriction on Mother's exclusive right to determine child's primary residence because some evidence supported the restriction).

Accordingly, we overrule John's fourth issue.

## D. Property Valuation and Division

We consider John's fifth, sixth, and seventh issues together because they concern the trial court's valuation and division of the parties' property.

### 1. Applicable Law and Standard of Review

The family code requires the court, in a divorce, to order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party. *See* Tex. Fam. Code Ann. § 7.001. The phrase "estate of the parties" means the parties' community property. *Wilson v. Wilson*, 44 S.W.3d 597,

---

[4]John did speculate that his job could take him anywhere, but "[s]peculation is not evidence." *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.).

600 (Tex. App.—Fort Worth 2001, no pet.) (citing *Cameron v. Cameron*, 641 S.W.2d 210, 214–15 (Tex. 1982)). The trial court has broad discretion in dividing the community estate of the parties as long as the division is just and right, *Powell v. Powell*, 822 S.W.2d 181, 184 (Tex. App.—Houston [1st Dist.] 1991, writ denied), but a just and right division of the community estate need not be equal. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998); *Forgason v. Forgason*, 911 S.W.2d 893, 896 (Tex. App.—Amarillo 1995, writ denied). In exercising its discretion, the trial court may consider many factors, among which is the size of the separate estates. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

However, "a division of marital property based on values that were not in evidence is an abuse of discretion." *In re Marriage of Adams*, No. 06-03-00028-CV, 2004 WL 351387, at *2 (Tex. App.—Texarkana Feb. 26, 2004, no pet.) (mem. op.); *Mata v. Mata*, 710 S.W.2d 756, 760 (Tex. App.—Corpus Christi 1986, no writ); *Haley v. Haley*, 713 S.W.2d 801, 803 (Tex. App.—Houston [1st Dist.] 1986, no writ).

### 2. The $2,000 Wedding Ring Valuation and Attorney's Fees

In his fifth and sixth issues, John argues that the trial court erred when it ordered him to return Amy's wedding ring to her, or alternatively, to pay $2,000 for Amy's attorney's fees, and when the trial court awarded Amy's counsel a conditional judgment of $2,000 against John because no evidence supported the trial court's finding of a $2,000 valuation of the ring.

20

Before trial, Amy filed a verified "inventory and appraisement" in which she identified a "[w]edding ring worth $2000 that is in the possession of [John]." However, Amy's verified inventory and appraisement containing the $2,000 valuation was not admitted into evidence.

We have held that in a divorce proceeding, unless a party's pretrial inventory and appraisal has been admitted into evidence, it may not be considered as evidence of a property's value. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied); *see also Cardenas v. Cardenas*, No. 13-16-00064-CV, 2017 WL 1089683, at *5 (Tex. App.—Corpus Christi Mar. 23, 2017, no pet.) (mem. op.) (stating unless a party's inventory and appraisal has been admitted into evidence, it may not be considered as evidence of a property's value); *Williams v. Williams*, No. 2-08-00033-CV, 2008 WL 5194227, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.) (overruling husband's challenge to trial court's determination of property's value based on wife's inventory and appraisement because wife "did not enter her inventory and appraisement into evidence" so we "cannot rely on the value set forth therein as evidence").

The only evidence of the ring's value was testimony from Amy that she had pawned the ring for $250 and testimony from John that he had repurchased and sold the ring for $500. Because there was no evidence adduced at trial to support the finding that the ring was valued at $2,000, we hold that the trial court abused its discretion by so finding. *See Van Heerden v. Van Heerden*, 321 S.W.3d 869, 880 (Tex.

App.—Houston [14th Dist.] 2010, no pet.) (explaining when valuing assets of the marital estate, "if several values are given, or if a witness testifies that the value may be higher or lower than his estimate, the court's determination of the value should be within the ranges in the evidence"); *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 836 (Tex. App.—Texarkana 1996, writ denied) ("A court of appeals should remand the entire community estate for a new division if it finds reversible error in a specific part of the division that materially affects the trial court's just and right division of the entire community estate."); *Haley*, 713 S.W.2d at 803 (stating that upon determining the trial court abused its discretion by dividing property by values not in evidence, "it is our duty to reverse the trial court's judgment and remand the property issue to the trial court for a new trial").

Further, in light of the specific facts of this case, because the trial court's order that John alternatively pay $2,000 of Amy's attorney's fees was expressly based not on the evidence supporting those fees but on the groundless valuation of the ring, we sustain his sixth issue. *See Henry v. Henry*, 48 S.W.3d 468, 481 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (remanding award of attorney's fees after having determined that the court abused its discretion by dividing the community estate because "to the extent the [attorney's] fees were awarded as part of the division of the property[,] the trial court should reexamine the award . . . as a part of making a just and right division of the property").

Accordingly, we sustain John's fifth and sixth issues.

### 3. Vehicle

In his seventh issue, John argues that the trial court erred by finding that the 2012 Toyota Corolla was in his possession when the undisputed evidence at trial demonstrated that ownership of the vehicle had been transferred to his parents and the vehicle was valued in an amount of less than was owed on the note. After listing this as an issue presented in his appellant's brief, John did not brief it. Accordingly, the issue is waived. *See WorldPeace v. Comm'n for Lawyer Discipline,* 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding failure of appellant's brief to offer argument, citations to record, or citations to authority waived issue on appeal); *cf. Hornbuckle v. Cadillac*, No. 02-15-00267-CV, 2016 WL 3157569, at *2 (Tex. App.—Fort Worth June 2, 2016, no pet.) (per curiam) (mem. op.) ("An appellant must discuss the facts and the authorities relied upon as may be requisite to maintain the point at issue."). We overrule John's seventh issue.

## IV. Conclusion

Having overruled John's first, fourth, and seventh issues and having sustained John's second, third, fifth, and sixth issues, we affirm in part and reverse in part. We affirm the trial court's decree as to the naming of John and Amy as joint managing conservators and the geographic restriction, and we affirm the unchallenged portions of the decree, including the granting of the divorce. We reverse the decree as to its drug testing and stair-up access provisions and its valuation and division of the community estate, and we vacate the judgment against John for $2,000 of Amy's

attorney's fees. We remand this case to the trial court solely to clarify the drug testing and stair-up access provisions and for a new trial on the division of the community estate.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: January 17, 2019